AVERY *against* KELLOGG and another.

Where a bill in chancery, after stating the case, prayed for relief by a decree of redemption or specific performance, as the court, upon the facts, should deem proper; after a hearing upon the merits, it was held, that the bill was not exceptionable as embracing distinct subjects; or at least, that an exception on this ground was not sustainable, in that stage of the cause.

*A,* having mortgaged two tracts of land to *T,* to secure a debt due from him to *A, T,* in *March,* 1833, obtained a decree of foreclosure against *A,* limiting the time of redemption to the 1st *Monday* of *January,* 1834. After an ineffectual negotiation for an extension of the time, it expired, without payment of the debt. A part of the premises was then sold, with the consent of the parties, and the purchase money applied to *T's* debt, leaving a balance due to *T* of 2129 dollars. On the 1st of *February,* 1834, *K,* at the request of *A,* and for the purpose of assisting him, agreed to pay the balance due to *T,* and receive from him a release deed of the premises, except the part sold; and *K,* at the same time, and as part of the same arrangement, gave a bond to *A,* conditioned to convey *K's* right in the premises to *A,* on his paying to *K,* 500 dollars, on the 1st of *April,* 1834, and the balance, by the 1st of *April,* 1835; and *K* also executed a lease of the premises to *A,* for the consideration of one dollar, until the 1st of *April,* 1835, with a condition, that the lease should terminate on the 1st of *April,* 1834, if *A* should fail to pay *K* said 500 dollars, at that time. The interest on the debt to *T* was computed to the 1st of *April,* 1835; and provision was made to deduct interest on sums paid before they were due. *A* failed to pay the 500 dollars on the 1st of *April,* 1834. *K,* notwithstanding, suffered him to remain in possession. On the 14th of *April,* 1834, *A* paid *K* 100 dollars, for which *K* gave him a receipt to account therefor by the 1st of *May,* either by paying back the money, or by applying it to rent of land, as *A* should prefer, or as *A* and *K* should agree. On the 29th of *December,* 1834, *K,* without the knowledge of *A,* conveyed his right in the premises to *B,* who, at that time, had knowledge of the foregoing facts, except the receipt given on the 14th of *April,* and was informed by *K,* that *A* had not complied with the condition on which he was to have the land, having paid only 100 dollars, which might be applied for rent. After *K* received his deed from *T, A* shingled a part of the dwelling-house and

New-London,
July, 1836.

Avery
v.
Kellogg.

made some wall on the premises. In *February*, 1835, *A* tendered to *K* and *B*, severally, the whole sum due, and demanded a deed of the land conveyed by *T* to *K*, and by *K* to *B*; which was worth 3000 dollars. They refused to receive the money, or to give the deed. On a bill in chancery, brought by *A* against *K* and *B*, it was held, 1. that A had not the equitable right of a mortgagor in the premises; 2. that although time, in this case, was a circumstance of decisive importance, yet it might be waived, by the defendants; and the conduct of *K*, in receiving the 100 dollars from *A* after the 1st of *April*, 1834, and retaining it after the 1st of *May*, without any application of it, and permitting *A* to make improvements upon the land, without claiming any thing from the non-fulfilment on his part, in connexion with the fact that the intervention of *K* was originally for *A's* assistance, amounted to a waiver of any advantage from the omission of *A*, to make the first payment at the day; 3. that parol evidence was admissible to prove a waiver, by the acts of the party; 4. that *B*, having purchased with notice of the principal facts, which were sufficient to put him on inquiry, was in no better situation than his vendor.

This was a bill in chancery, brought to the superior court, seeking such relief as the court, upon the facts stated and proved, should deem proper.

In *January*, 1822, the plaintiff mortgaged his home farm, and another tract of land, called the *Purple* lot, to *Roger* and *Solomon Taintor*, to secure a note due from him to them. This mortgage became the property of *John A. Taintor*, who, in *March*, 1833, obtained a decree of foreclosure, limiting the 1st *Monday* of *January*, 1834, as the ultimate time of redemption. A short time before the last-mentioned day, the plaintiff, having found a purchaser for the *Purple* lot, applied to *Taintor* to make arrangements, that, on the sale of the *Purple* lot, further time might be given for the balance; but no arrangement was then made; and the time limited by the decree expired. On the 1st of *February*, 1834, the defendant, *Kellogg*, for the purpose of assisting the plaintiff, and at his request, and with the assent of *Taintor*, agreed to pay him the balance due, being 2129 dollars, 84 cents; and it was agreed between the plaintiff, *Kellogg* and *Taintor*, that the plaintiff should pay the costs and fees to *Taintor*; and that, upon such payment, and upon the payment by *Kellogg* of the precise balance due to *Taintor*, he should give *Kellogg* a release deed of the premises, except the *Purple* lot, which, had then been sold for 1000 dollars, to the purchaser procured by the plaintiff; and it was part and parcel of the same agreement, that *Kellogg* should execute and deliver a bond to the

plaintiff, and that a lease of indenture should also be executed by them. These instruments were accordingly executed, dated, *February* 1st, 1834.

The penalty of the bond was 3000 dollars, and the condition was as follows: "That if upon the payment, by said *Avery,* to said *Kellogg,* on or before the 1st day of *April,* 1834, of the sum of 500 dollars; and if upon the payment, by said *Avery,* to said *Kellogg,* of the further sum of 1759 dollars, 6 cents, on or before the 1st day of *April,* 1835, the said *Kellogg* shall, by release deed, convey to said *Avery,* so paying said sums, two certain tracts of land lying in *Colchester,* [describing the home farm,] containing, in the whole, about 200 acres, with the buildings thereon, now owned by said *Kellogg,* and now by said *Kellogg* leased to said *Avery,* thereby conveying to said *Avery* all the right, title and interest, which said *Kellogg* now has in said two tracts of land; then this bond shall be void: Or, in case said *Avery* shall fail to pay said sum of 500 dollars to said *Kellogg,* by the 1st day of *April,* 1834; then also, this bond shall be void: And also, if said *Avery* shall so pay said sum of 500 dollars to said *Kellogg,* on or before the 1st day of *April,* 1834, and shall fail to pay said sum of 1759 dollars, 6 cents, to said *Kellogg,* on or before the 1st day of *April,* 1835; then also, this bond shall be void; otherwise, to be and remain in full force. The interest is included in the sums above-mentioned, up to the 1st day of *April,* 1835; and the interest is to be deducted on all sums, which said *Avery* shall pay said *Kellogg* previous to that time, from the time it is paid, up to the 1st day of *April,* 1835."

The lease was as follows: "That said *Kellogg,* for the consideration of one dollar, received of said *Avery,* doth hereby demise, grant, lease, and to farm let, to him, his heirs, &c., the two following described tracts of land, [describing the premises,] to have and to hold said demised and letten premises, from the day of the date hereof, until the 1st day of *April,* 1835. And said *Kellogg* further covenants with said *Avery,* that he hath good right to let said described and letten premises, in the manner aforesaid. And said *Avery,* on his part, covenants and agrees with said *Kellogg,* that he will use and improve said letten premises, during the term of this lease, according to the rules of good husbandry, and not commit waste therein; and that he, said *Avery,* shall and will pay all taxes,

which may be assessed on said letten premises, or become due
thereon, during the term of this lease. And said *Avery* further
covenants and agrees with said *Kellogg*, that he, said *Avery*,
shall and will, on the expiration of this lease, *viz.*, on the 1st
day of *April*, 1835, peaceably surrender and give possession of
all said letten premises to said *Kellogg*, in as good state of re-
pair as the same now are, natural decay and providential acts
excepted. And it is further covenanted and agreed, on the part
of said *Avery*, that he shall and will pay to said *Kellogg*, the
sum of 500 dollars, on or before the 1st day of *April*, 1834;
which sum of 500 dollars, if paid by said *Avery*, is to apply
and be applied in payment and satisfaction of that sum, for 500
dollars, which said *Avery* is to pay said *Kellogg*, by the 1st
day of *April*, 1834, conformable to the condition of a certain
bond given by said *Kellogg* to said *Avery*, of even date with
this indenture. Now, if said *Avery* shall fail to pay the sum
of 500 dollars to said *Kellogg*, on or before the 1st day of *April*,
1834, this indenture of lease shall then terminate, and there-
after shall be of no force ; and said *Kellogg* shall then have
right to enter and take possession of all said letten premises."

In pursuance of this arrangement, *Kellogg* paid *Taintor*
the sum due him on the mortgage, exclusive of the costs and
fees, which were paid by the plaintiff; and *Taintor* thereupon
executed a release to *Kellogg*. And it was agreed, that the in-
terest on the whole amount should be computed to *April* 1st,
1835, making 2259 dollars, 6 cents; and *Kellogg* agreed, that
interest upon all such sums as *Avery* should pay prior to *April*
1st, 1835, for completing the purchase, should be deducted, from
the time of payment to that time.

The 500 dollars was not paid on or before the 1st of *April*
1834. *Kellogg* did not enter into possession ; but the plain-
tiff has, at all times since, used and improved the lands.

On the 14th of *April*, 1834, the plaintiff paid *Kellogg* 100
dollars, for which, and the application thereof, he gave the fol-
lowing receipt : " Received, *Colchester*, *April* 14th, 1834, of
*Eleazer Avery*, 100 dollars, which I am to account for, by the
1st day of *May* next, either to pay back to him, or apply it to
rent of farm, as he shall prefer, or as he and I shall agree.
[Signed] *Samuel Kellogg*."

On the 29th of *December*, 1834, *Kellogg*, without the
knowledge or consent of the plaintiff, released his interest in

the premises to *Brown*, one of the defendants, for 2330 dollars; the facts before stated being known to *Brown*, when he received his deed from *Kellogg*.

In *November*, 1834, before *Brown* received his deed, he was informed, by *Samuel A. Peters*, Esq., whom he consulted, that in his opinion, if the 500 dollars were not paid by the time mentioned in the bond, he could safely take a deed from *Kellogg ;* but it was not then known, that said sum of 100 dollars had been paid to *Kellogg*. When *Brown* received his deed from *Kellogg*, he was informed by *Kellogg*, that the plaintiff had not complied with the condition of the bond ;— that he had received 100 dollars only, after the 1st of *April*, 1834, which, he said, might be applied for rent ; but *Brown* was then ignorant of the fact that a receipt had been given for the 100 dollars paid to *Kellogg*, and of the terms of the receipt.

An action of disseisin, to recover the premises, was commenced by *Brown*, and is now pending.

On the 20th of *February*, 1835, the plaintiff, to save his estate and compel a fulfilment of said contract, offered and tendered to *Kellogg* 2259 dollars, 6 cents, being the whole sum so due or to be paid ; and on the 21st of *February*, 1835, he tendered the same sum to *Brown ;* and demanded of each of them a deed of the farm, according to the contract. They refused to receive the money, or give the deed. *Avery* has, at all times, been ready to pay this sum of money, and brings it into court, that it may be received by *Kellogg* or *Brown*.

The premises, when conveyed by *Taintor* to *Kellogg*, and when the bill was brought, were, and still are, worth 3000 dollars.

Since *Kellogg* received his deed of the farm, the plaintiff has shingled a part of the dwelling-house, and made some wall on the premises.

The defendants objected to parol evidence to prove any waiver, by them, or either of them, of the terms of the bond and lease. The court received parol evidence to prove the facts before stated, except as to the written instruments and legal proceedings, provisionally, subject to the objection.

Upon these facts, the court reserved the question, whether the parol evidence objected to, is admissible, and whether any, and if any, what decree should be passed upon the bill, for the advice of this court.

*Goddard* and *Strong*, for the plaintiff, contended, 1. That as to *Brown ;* though he is not found to have had knowledge of all the facts, yet he had knowledge of such facts as should have put him on enquiry ; and if so, he stands where *Kellogg* stands.

2. That as to *Kellogg ;* notwithstanding the decree of foreclosure, and the expiration of the time limited, the course taken by the parties, made this, in *Kellogg's* hands, a redeemable interest. *Dashwood* v. *Blythway*, 1 *Eq. Ca. Abr.* 317. In the first place, this was the obbject of *Kellogg's* intervention. He came in to assist *Avery*, there being so great a difference between the value of the estate and the debt. Secondly, part of the sums embraced in the decree, *viz.*, the costs, were paid by *Avery ;* and though *Kellogg* did not take a covenant or obligation for the whole debt, he did for 500 dollars of it ; thus leaving the security by the estate, adequate for the balance. Thirdly, the course pursued by *Kellogg*, after the 1st of *April*, 1834, was, in effect, a waiver of the failure to pay the 500 dollars by that day.

3. That if this is to be regarded as a contract of purchase, under all the circumstances of the case, *Avery* having been in possession, and the whole amount tendered within the period for the payment of the whole, (though the first instalment was not in season,) time is not so much of the essence of the contract, but that it will be enforced. *Newl. Contr.* 230. & seq. (ed. 1808.) *Gibbs* v. *Champion*, 3 *Ham. Rep.* 335. S. C. *Ohio Cond. Rep.* 599. *Tyree* & al. v. *Williams* & al. 3 *Bibb* 365.

4. That parol evidence was properly received to show a waiver of strict performance. The waiver is inferred from the conduct of the party ; and this must always rest in parol.

*Isham* and *Brainard*, for the defendants, contended, 1. That this is a bill for a specific performance, with which a prayer to redeem, cannot be joined. *Jerome* & al. v. *Jerome*, 5 *Conn. Rep.* 353. 356.

2. That the plaintiff cannot redeem, because there is no mortgage in the case. The defendants' title does not come from the plaintiff; and it was expressly intended not to be a mortgage.

3. That a specific performance will not be decreed ; first, be-

*New-London, July, 1836.*

Avery
*v.*
Kellogg.

cause the condition has not been performed, by the plaintiff; and secondly, because it has not been waived, by the defendants. *Benedict* v. *Lynch*, 1 *Johns. Ch. Rep.* 370. *Hatch* v. *Cobb*, 4 *Johns. Ch. Rep.* 559. 6 *Petersd. Abr.* 41. 39. n. Thirdly, a specific performance cannot be decreed against *Brown;* he being a *bona fide* purchaser without notice. *Kempshall* v. *Stone*, 5 *Johns. Ch. Rep.* 193.

4. That parol evidence was inadmissible to show a waiver of the condition. A covenant cannot be vacated in this way. *Littler* v. *Holland*, 3 *Term Rep.* 590.

WILLIAMS, Ch. J. The first objection made to this bill, is, that it combines a prayer to redeem and a prayer for specific performance. In support of this objection, the case of *Jerome* & al. v. *Jerome*, 5 *Conn. Rep* 352., is cited. That was a bill to perpetuate testimony, and also for relief; and upon a demurrer, it was held, that these subjects could not be united. Here has been a hearing upon the merits; and this objection is urged against a decree. The plaintiff has, in his bill, stated the facts, upon which he founds his claim for relief, and prays the court for such relief as these facts will warrant. If the facts constitute this transaction a mortgage, he wishes to redeem; if only an agreement to sell, he prays that this agreement may be carried into effect, according to its true intent. We do not think the case is within the principle of the case cited; and feel no embarrassment, in this stage of the cause at least, from the form in which the facts are presented.

Do the facts disclosed, constitute this a mortgage; and has the plaintiff a right to redeem? That a decree of foreclosure had been obtained of this land, and another lot, called the *Purple* lot, which had been mortgaged, by the plaintiff, to *Taintor*, and that a negotiation had been had between the plaintiff and *Taintor*, relative to the lands mortgaged, are facts found by the court. This negotiation, however, failed; and the foreclosure went into effect; by which, *Taintor* became the complete owner of the land. After this time, *Kellogg*, for the purpose of assisting the plaintiff, and at his request, and with the assent of *Taintor*, agreed to pay the balance due on the mortgage debt due to him, deducting the avails of the *Purple* lot, which was sold, and the costs and fees, which were paid by the plaintiff. And *Taintor* was to give a deed of the land to *Kellogg*,

who, on his part, at the same time, and as part of the same agreement, stipulated to execute the bond and lease above-mentioned, by which *Kellogg* binds him, if the plaintiff should pay 500 dollars, on the 1st of *April*, 1834, and the remainder on the 1st of *April*, 1835, to convey to him the land in question ; the bond to be void, if he failed to make either of these payments. The interest on the debt to *Taintor*, was computed to the 1st of *April*, 1835, and provision was made to deduct interest on sums paid before they were due. *Kellogg* also leases the premises, at a nominal rent, to the plaintiff, until the first of *April*, 1835 ; the plaintiff to pay all taxes, and to pay 500 dollars, by the 1st of *April*, 1834, and if not paid, said lease was to terminate, and *Kellogg* had a right to take possession of the premises. Do these facts create the relation of mortgagor and mortgagee, between *Avery* and *Kellogg ?* *Avery* had been the mortgagor to *Taintor ;* but the time of redemption had expired. *Taintor* had become the equitable, as well as the legal owner of this land ; and he conveyed it to *Kellogg*, unclogged by any condition or limitation.

It is found, however, that *Kellogg* received this property of *Taintor*, at the request of the plaintiff, and for the purpose of assisting him. This, however, was not done until the title had gone from the plaintiff, and no interest, legal or equitable, remained in him. Had *Taintor* conveyed to *Kellogg*, with the understanding, and for the purpose of this arrangement, there certainly would have been a strong equity in *Avery*, as against *Kellogg*. But *Kellogg* would, even then, stand rather in the relation of a trustee, than a mortgagee of the property.

It is said, that *Kellogg* came in as a purchaser, to prevent a forfeiture. But the forfeiture had occurred before this transaction ; and *Taintor's* title had become absolute.

The fact of the computation of interest to the 1st of *April*, 1835, and the lease of the land at a nominal rent to that time, it is also claimed, shows that this is a mortgage. These facts certainly show, that the plaintiff was eventually to have this land ; but do not prove, in what character he was to receive it, whether as purchaser, or as mortgagor. The case of *Barrel* v. *Sabine*, 1 *Vern.* 268., somewhat resembles this, except that there was no foreclosure. There, the plaintiff had paid for incumbrances, renewals of leases, &c., 950*l.* for property worth much more ; took articles for a conveyance ; received a con-

veyance ; and went into possession, with a declaration that up-on payment of the money advanced, with 100*l.* for his trouble, within one year and a half, the defendant should have the land again. This, being before the statute of frauds, seems to have been placed upon the same ground, as if there had been a wri-ting ; and the claim was, that this was a mortgage ; but the court held it to be an absolute purchase.

It is said, that had *Taintor* made this agreement, it would have opened the foreclosure. Courts of equity do guard, with such anxious care, the interests of the mortgagor, in conse-quence of the power of the mortgagee over him, that this may be true. But when a third person comes in, who has never stood in the relation of mortgagor, less care is observed, and the same vigilance is not exercised over him, as over the original mortgagor. Here, *Avery* does not become responsible, ex-pressly, to *Kellogg,* for the whole debt paid by him to *Tain-tor ;* nor is he the owner of the land, which *Kellogg* is to convey to him. We cannot, therefore, say, that he is to be con-sidered as the mortgagor to *Kellogg ;* although his former re-lation to this property might have had an important influence upon this arrangement.

The next question presented, is, as the plaintiff has not com-plied with the terms of the contract on his part, can a court of equity grant him relief? By the contract, *Kellogg* was to convey the farm by the 1st of *April,* 1835, upon the plaintiff's paying 500 dollars on the 1st of *April,* 1834, and the remain-der on the 1st of *April,* 1835 ; and on failure to do either of these, *Kellogg's* contract to convey, was to be void. On the one side, it is claimed, that in such a case, time is not the essen-tial part of the contract ; and therefore, that a court of chance-ry will relieve, although there is not a strict compliance in this respect ; in support of which, the case of *Gibbs* v. *Champion,* 3 *Ham.* 335., in the state of *Ohio,* is cited. On the other hand, it is claimed, that time is essential in a court of law and equity ; and no relief, therefore, can be afforded to the plaintiff ; and the case of *Benedict* v. *Lynch,* 1 *Johns. Ch. Rep.* 370., and some other decisions of Chancellor *Kent,* are cited.

This question has been several times before the supreme court of the *United States,* who, while they have held, that time is not of the essence of the contract, and that a failure to perform at the day, will not, of itself, prevent a specific perform-

New-London,
July, 1836.

Avery
v.
Kellogg.

ance, have, in the cases before them, denied the relief sought, on account of the failure of the plaintiff to perform, coupled with the fact of a great change in the value or situation of the property sought. *Brashier* v. *Gratz* & al. 6 *Wheat.* 528. *Pratt* v. *Carrol*, 8 *Cranch*, 471.

In the case from *Ohio*, a contract was made on the 1st of *May*, 1825, by which *Champion* agreed to convey a lot of ground to *Gibbs*, for 250 dollars; payments to be made on the 26th of *January*, and 26th of *July*, 1826; the conveyance to be made on payment of the money as it became due; posssession to be taken immediately, and then 25 dollars paid or secured. Nothing being done, *Champion* wrote to *Gibbs*, that if he did not take possession, and pay or secure the 25 dollars, he should consider the contract abandoned. Nothing was done until the last payment became due; (*Champion* retaining the negotiable notes he had received for the money,) when the plaintiff tendered the amount due on the notes. The court granted the relief; and said they had known no case where a neglect to make the first payment, which had been so promptly remedied, by a proffer to pay the whole, had been held an abandonment of the contract. 3 *Ham.* 335. S. C. *Ohio Cond. Rep.* 599.

So, too, in the case of *Tyree* & al. v. *Williams* & al. 3 *Bibb*, 366., in *Kentucky*, the court say, that at law, time is of the essence of the contract; but unless the parties have expressly stipulated it shall be so, it is otherwise in a court of equity; and its execution will be decreed, notwithstanding the time has elapsed for its performance, unless there has been a culpable negligence, or a wilful delay, on the part of him who is seeking the aid of a court of equity.

In the case of *Benedict* v. *Lynch*, in *New-York*, the plaintiff, on the 28th of *March*, 1810, agreed to purchase of the defendant, a piece of ground, and pay in two, three and four years, with interest annually; and upon complying with the payments, the defendant agreed to give a deed. If the plaintiff failed in them, or any of them, the agreement was to be void. He entered, and made improvements; but omitted to make the payments until 1814, when he tendered all the money due on the contract, which the plaintiff refused to accept. The plaintiff had often declared his inability to pay, and disclaimed any right to the premises, and relied on the defendant's liberality

for the occupation of them. In 1812, the defendant notified him to quit the premises; and the plaintiff then agreed, that if he would permit him to remain one year, and occupy, he would clear and fence five acres of the land; to which the defendant assented. In *October*, 1813, when a purchaser applied to the defendant, the plaintiff acquiesced in the sale, and declared he should abandon, whether sold or not. The Chancellor held, that there was an abandonment of the purchase, and that there was no colour of equity in the plaintiff. In his opinion, the Chancellor goes at length into an examination of the *English* authorities on this subject, with his usual learning and accuracy : and the result of his investigations is, that it is an acknowledged rule in courts of equity, that where the party applying for a specific performance, has omitted to execute his part of the contract, by the time appointed for that purpose, without a sufficient reason to justify or excuse his delay ; and where there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay ; the court will not compel a specific performance. This rule, he says, is founded in the soundest principles of policy and justice. Its tendency is to uphold good faith and punctuality in dealing. The notion that seems too much to prevail, that a party may be utterly regardless of his stipulated payments, and that a court of chancery will, almost at any time, relieve him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts, and the character of the court. He adds: " From the view which I have taken of the cases, the general principle appears to me to be perfectly established, that time is a circumstance of decisive importance in these contracts ; but it may be waived, by the conduct of the party ; and it is incumbent upon the party calling for a specific performance, to show that he has used due diligence, or if not, that his negligence arose from some just cause, or has been acquiesced in ; that it is not necessary for the party resisting the performance, to show any particular injury or inconvenience ; it is sufficient if he has not acquiesced in the negligence of the plaintiff, but considered it as releasing him." 3 *Johns. Ch. Rep.* 379. In the views thus expressed, by this eminent jurist, the court fully concurs.

In the case before us, there is an express stipulation, that if the plaintiff failed to make the payments, or either of them, the

New London,
July, 1836.

Avery
v.
Kellogg.

bond and lease executed by *Kellogg*, were to be void. *Avery* did fail to make the first payment, and has shown no just cause for his negligence. *Kellogg* then might have treated this contract as at an end, and placed himself on his legal rights. He might, on the 2nd of *April*, 1834, have said to the plaintiff, " The land is mine ; you have neglected to do what you expressly promised ; and you cannot remain in possession under that agreement." It is not intended to say, that *Kellogg* was bound to give this immediate notice ; but he had no right, if he meant to avail himself of this lapse of time, to do any thing, which would tend to lull *Avery* into security, or which would lead him to make payments or improvements, under the idea that the property was to be his. When, then, he knew of any advancements *Avery* was about to make under that impression, it was his duty to inform him, that he should insist upon his legal rights. But what does he do ? He had undertaken to assist *Avery* ; and *Avery* doubtless relied upon his assistance. He ventures to do what a cautious man would not do, and suffers the time of the first payment to elapse, and within fourteen days, pays *Kellogg* 100 dollars. It is not found, in so many words, that it was on that account ; but it is not claimed, that there was any other debt due from *Avery* to *Kellogg* ; and this money *Kellogg* receives. No one can believe that this money was paid by *Avery*, for any purpose but in part payment of this bond of 500 dollars ; and if *Kellogg* did not mean to receive it on that account, he was bound in good faith so to inform him.

It may be said, that the terms of the receipt show, that *Avery* was so informed. They were such as were calculated to excite suspicion as to *Kellogg's* intention, but left the final result equivocal. He says, he has received of *Avery* 100 dollars, " to account for, by the 1st of *May* next, either to pay back to him, or apply it to rent of farm, as he shall prefer, or as he and I shall agree." No one will believe, that *Avery* intended to loan money to *Kellogg* ; or that he was paying in advance for the rent of a farm, which he had never contracted to hire ; but he takes the receipt, such as it is, knowing that its mysterious language will soon be explained ; for *Kellogg* was to account for this money on the 1st of *May*. At that time, *Avery* had a right to expect, that *Kellogg* would inform him, whether he received that money to apply, as he, *Avery*,

New-London,
July, 1836.

Avery
v.
Kellogg.

intended, or not ; for on that day, *Kellogg* had promised to account for it. The first of *May* passes by. *Kellogg* retains the money. The application contemplated by the receipt, is not made. The same silence as to *Kellogg's* intention is continued, and *Avery* remains yet in entire ignorance how *Kellogg* means to apply the money. As *Kellogg* had, by this receipt, left this matter for future adjustment, and presumed that this would be done on the 1st of *May* following ; and as he then wholly neglected to do any thing on the subject, or come to an explanation of his views and intentions in relation to this matter ; we think he must be considered as having acquiesced in the application, which the plaintiff intended to give to that money originally. Such a construction best comports with the integrity of the defendant, and the justice due to the plaintiff. The defendant, then, having received this money, on account of the payment due on the 1st of *April*, must be considered as having waived any advantage from the omission of the plaintiff to make the first payment at the day.

Besides, the plaintiff has gone and made repairs upon the dwelling-house and wall upon the lands, reposing with confidence upon the assistance of the plaintiff, and the fact that he had not claimed any thing from the non-fulfilment on his part. It is not, indeed, expressly found, that *Kellogg* knew of these improvements, although as he lived in the same town, it cannot be doubted that it would not have escaped his notice. But whether he did or not, the course he had pursued was exactly calculated to lead the plaintiff to go on as if the property was his, and upon the faith of that he has acted. The case differs entirely from that of *Benedict* v. *Lynch*. There, the defendant had given the plaintiff notice to quit ; had conversed with him about the sale ; had allowed his stay upon terms ; the plaintiff had declared his inability to pay ; disclaimed all right to the premises ; acquiesced in the sale, and said he should abandon it, whether sold or not. And while we hold that case to have been properly decided, we think that the facts in this case, will justify a result entirely different. The defendant here did not take that open and manly course, which he should have done, if he intended to rely upon a strict performance by the plaintiff, but acquiesced in the plaintiff's neglect to make the first payment at the day.

It was objected, that a waiver of an advantage given by a

New.London, July, 1836.

Avery
v.
Kellogg.

written contract, could not be proved by parol. And the case of *Littler* & al. v. *Holland*, 5 *Term Rep.* 590., was cited. That was an action on a covenant to build two houses by a given day. They were not completed by the day; and the plaintiff, instead of proving performance, as alleged, offered to prove that the time had been enlarged, by parol agreement of the parties; and it was held, that the proof did not support the issue. This was correct; and has been followed by a course of decisions in *New-York*. *Langworthy* v. *Smith*, 2 *Wend.* 587., and the cases there cited And yet it is a well settled principle, that the conduct of a party may be considered as a waiver of a compliance with the condition of a bond; and there is no infringement of any principle of law in permitting parol evidence of such waiver. *Fleming* v. *Gilbert*, 3 *Johns. Rep.* 528.

In the case of *Goss* v. Lord *Nugent*, 5 *Barn. & Adol.* 58., (27 *Serg. & Lowb.* 33.,) where there was an agreement to sell sundry lots of land and make a good title; and it was afterwards verbally agreed to waive the title to one of the lots; the court of *King's Bench* held, that this evidence could not be received within the statute of frauds. The court, speaking of these cases of an enlarged performance, say, they were decided on the ground that the original contract continued, and that it was only a substitution of different days of performance, and abstained from any opinion whether these cases were rightly decided, and whether relief in the case before them could not be had in a court of equity.

Here, however, the plaintiff does not rely upon any express agreement of the party to waive performance, but upon his acts; and why these acts cannot be shown, as well as in case of a forfeiture under a lease, it is not easy to see. We perceive no more objection to parol proof, in this case, than where there is a claim of part performance, or where a person has stood by and seen another make improvements upon lands he had agreed to sell him.

It was also claimed, that there was no mutuality in this contract.—It is true, that the plaintiff does not expressly bind himself to pay the whole sum; but he binds himself to pay 500 dollars; and that doubtless was considered by the parties as a sufficient pledge that the remainder should be paid, or an

*Windham,
July, 1836.*

Avery
*v.*
Kellogg.

ample compensation in case it was not. This objection cannot prevail.

It was intimated, also, that there was adequate remedy at law. If *Brown* can be reached, upon this application, there can be no foundation for this claim, as the law cannot compel a reconveyance of the land.

The question then arises, can any decree be passed against *Brown?* It is said, he had no notice of the receipt, and some of the other facts in the case. But he did know of *Kellogg's* agreement to convey this estate to *Avery.* He had enough, then, to put him on inquiry why this was not done; and no good reason is shown why he had not full information on the subject. The principal facts were before him;—enough to put him on his guard; and if under these circumstances, he purchased, he can be in no better situation than his vendor.

The superior court is, therefore, advised to grant the prayer of the bill.

In this opinion the other Judges concurred.

Decree for plaintiff.