The Town of HUNTINGTON *against* BIRCH and others:

IN ERROR.

Where the report of a committee appointed to lay out a highway, stated, that having taken the oath and given the notice by law required, they met, &c. ; and such report was accepted and recorded ; it was held, that it sufficiently appeared from the record, that the oath prescribed by law was taken by the committee, before they entered on the duties of their appointment.

Though two forms of oath are prescribed for such committee, one in the statute relating to highways, (*s.* 12.) and the other in the general act prescribing the forms of oaths, (*s.* 20.) ; yet the former is the only one proper to be taken by such committee ; the latter having become unnecessary and inapplicable, and superseded by the former.

Notice to the town to be affected by the laying-out or alteration of a highway, previous to the appointment of a committee, is essential to give the court jurisdiction of the subject, and must be found by the court.

Where the county court, on a petition for alterations in a highway in the town of *H.,* found, that said petition was legally served on the select-men of the town of *H.,* and that the select-men of said town have ever neglected and refused to make said alterations, although requested so to do ; and thereupon proceeded to appoint a committee to make such alterations ; on a remonstrance by the town of *H.* against the acceptance of the report of the committee, alleging, that such town had not been legally notified of the

application with respect to the alterations prayed for, it was held, that the remonstrants were precluded, by the finding of the court, from proving such want of notice and such neglect and refusal.

*Fairfield,*
**June, 1837.**

Huntington
*v.*
**Birch.**

THIS was a petition returnable to the county court of *Fairfield* county, *November* term, 1834, brought by *Birch* and others against the towns of *Huntington* and *Monroe,* praying for alterations in certain highways in those towns. At the next term, *viz.* in *January,* 1835, the court found that said petition was legally served on the select-men of the towns of *Huntington* and *Monroe ;* and that said select-men of said towns have ever neglected and refused to make said alterations in said highways, although requested so to do, by *Donald Judson,* Esq., in behalf of the petitioners, as stated in said petition. The court thereupon appointed a committee to enquire into the convenience and necessity of the alterations prayed for in the petition ; and, if they should be of opinion that said alterations would be of common convenience and necessity, they were to proceed to survey and lay them out, and assess the damages which should accrue to individuals, and make report of their doings to the term of the court in *August,* 1835. The report of the committee, after reciting the petition, stated, that having taken the oath and given the notice by law required, they met, to enter upon the duties of their appointment, in *Monroe,* on the 14th of *April,* 1835 ; when and where the petitioners appeared ; and said towns, by their agents and select-men, also appeared ; and the parties were fully heard, with their evidence, &c. The report then described the alterations surveyed and laid out.

At the term of the court in *January,* 1836, the town of *Huntington,* by their agents, appeared, and filed a remonstrance against the petition and report of the committee, as follows : First, the following words in said petition, *viz.* ' The petitioners further say, that the highway leading from *Derby* bridge, passing near *Huntington* town-house to the public green in said *Monroe,* is hilly and circuitous, and that public convenience and necessity require, that several alterations should be made in said highway between said *Derby* bridge and said town-house in *Huntington ;* also, between said town-house and said public green in *Monroe ;* by which many of the hills now passed over on said highway, may be avoided, and the

*Fairfield,*
*June, 1837.*

Huntington
*v.*
Birch.

road, in many places, may be shortened and laid over more feasible ground ; the whole of said highway lying in part in said town of *Huntington* and in part in said town of *Monroe'*— were not in said petition, when the same was served on the respondents ; nor were the said town of *Huntington*, in any way or manner, ever legally notified thereof, at any time before the appointment of said committee : and in each and every instance in said petition, where the word 'highways' in the plural number, is written therein, the same has either been inserted since the service of the original petition on said town of *Huntington*, or since that time altered from the word 'highway,' in the singular number, to the word 'highways,' in the plural number. And said town of *Huntington* further say, that no service was ever made on said town, or legal notice in any way given to them, of any petition for alterations in said road from said *Derby* bridge passing near *Huntington* townhouse to the public green in said *Monroe ;* and that all that part of said petition relating thereto, was inserted therein, while the original petition, was pending in this court ; and no legal notice thereof was ever given to the remonstrants, nor were they ever summoned to answer thereto : Also, the appointment of said committee, for the reasons aforesaid, was erroneous and void. And said alterations in said petition were made without the knowledge or permission of said county court.

"Secondly, the remonstrants say, that the select-men of said town of *Huntington* never did refuse to lay out said highways, or make said alterations, prayed for in said petition ; nor were they ever requested so to do.

"Thirdly, the said alterations prayed for in said petition, and made by said committee, are not of public convenience and necessity."

On the trial of this remonstrance, the town of *Huntington* offered evidence, to prove the facts therein, first and secondly alleged, in respect to the additions made to the petition, after service thereof, and the want of notice to the town of *Huntington ;* and that the select-men of that town, never refused to lay out said highway, or make the alterations prayed for, or were ever requested so to do. The petitioners objected to all evidence whatsoever to prove these facts. The court decided, that this objection was well founded, on the ground that the finding of facts by the court, in the order appointing the committee, ren-

dered it not legally correct for the town of *Huntington* to prove the facts in the remonstrance stated ; and for this reason only, the evidence so offered was rejected.

The court were of opinion, and found, that the facts alleged in the remonstrance were not true ; and thereupon accepted the report of the committee, and established the alterations of the highways laid out and described in the report, as public highways.    The town of *Huntington* then brought a writ of error in the superior court ; and the judgment of the county court being affirmed, the case was brought, by motion in error, before this court for revision.

*Sherman,* for the plaintiffs in error, contended, 1. That the committee were not qualified according to law.    Two oaths are prescribed, by the statutes ; (*Stat.* 269. *tit.* 48. *s.* 12. and 367. *tit.* 72. *s.* 20.) and both must be taken.    The report says, the committee "took *the oath* by law required," but does not say what oath.    It seems then, that but one oath was taken ; and which one, does not appear.

2. That the testimony offered in the court below to prove the remonstrance, was admissible.    It is not claimed, that when a fact has been found by the court, the court may be called upon to contradict that fact.    It is admitted, that when a court competent to find a fact, has found it, that finding is conclusive.    But a decision of a court is of no validity, unless it has *a right* to decide.    It must have jurisdiction over *the person—i. e.* the party—in this case, the town.    The court can never have jurisdiction over a person, until process has been served upon him, (unless he has submitted to its jurisdiction ;) and it has no right to determine the question of notice, until it has thus gained jurisdiction.    In a criminal case before a justice, he has no jurisdiction, unless the person proceeded against, is before him.    *Bigelow* v. *Stearns,* 19 *Johns. Rep.* 39.    If a court has no cognizance of a fact, it has no right to find it.    The town, in this case, was never in court, except so far as the first mentioned road was concerned.    Suppose the town had suffered a default, and an entirely different road had been substituted ; would the town be concluded, by the doings of the county court ?

*Betts* and *Dutton,* for the defendants in error, contended, 1.

*Fairfield,*
June, 1837.

Huntington
*v.*
Birch.

*Fairfield,*
*June, 1837.*

Huntington
*v.*
Birch.

That the oath prescribed in the statute relating to highways, (*Stat.* 269.) is the only one that is required to be taken.

2. That it sufficiently appears, that the committee took such oath and acted under it. The law will infer from the report of the committee, that they took all oaths necessary to be taken. *Husted* v. *Greenwich,* 11 *Conn. Rep.* 383.

3. That the statute relating to highways (*s.* 12.) requires the county court to find the fact of service, or an appearance, before they appoint a committee. This is as necessary as to find a neglect and refusal on the part of the select-men. *Plainfield* v. *Packer,* 11 *Conn. Rep.* 576. *Waterbury* v. *Darien,* 8 *Conn. Rep.* 162. *Treat* v. *Middletown,* 8 *Conn. Rep.* 243.

4. That this finding, being within the jurisdiction of the court, is conclusive. *Denison* v. *Hyde,* 6 *Conn. Rep.* 508. 1 *Stark. Ev.* 191. 194. No averment can be made, or proof admitted, to contradict the record. 1 *Stark. Ev.* 215. n. *Beach* v. *Norton,* 8 *Conn. Rep.* 74. *The Commonwealth* v. *Churchill,* 5 *Mass. Rep.* 182. The court, in this case, has found, that the whole petition was served upon the town. If the court can be required to enquire, a second time, into the same facts, how often may it be compelled to repeat the enquiry? And after all, what better claim has the last record, than the first, to absolute verity?

5. That if there has been any mistake, the proper remedy is, by a petition for a new trial.

HUNTINGTON, J. Two causes of error have been assigned and argued before us by counsel : 1. That it does not appear from the record, that the oath prescribed by law, was taken by the committee, before they entered on the duties of their appointment. 2. That the county court should have received the evidence offered in support of the remonstrance.

1. It is admitted, that the statute requires an oath to be taken, by the committee, before they proceed to execute the duties imposed upon them. The form of the oath is prescribed in the act, *tit.* 48. *s.* 12. *p.* 69. Upon examining the record, we find it stated, by the committee, in their report, immediately following a recital of the petition and of the proceedings of the county court making the appointment, &c., "that *having taken the oath,* and given the notice by law required, as above speci-

fied, we met," &c. In view of this distinct and unequivocal averment, it would seem difficult to maintain the objection, that *it does not appear* the oath prescribed by law was taken.

It is, however, insisted, that by the existing laws of this state, *two* oaths are to be taken, before the committee can legally act, *viz.* the one to which we have referred, and the one found in *tit.* 72. *s.* 20. *p.* 367 : And as it is to be fairly inferred, that but a single oath was administered, the requirements of the statutes have not been observed. It is further claimed, that if one only is necessary, yet as two are prescribed, it should appear *which* was administered, that it may be seen that the one having the direct application to the duties to be performed, was in fact taken.

We are of opinion, that this objection to the proceedings cannot be sustained, in either of the points of view in which it has been presented. The statute which regulates the whole subject of highways, has not, in general terms merely, provided that an oath shall be taken, but it has recited the form of such oath. It declares, that the committee appointed to enquire into the convenience and necessity of a highway prayed to be laid out or altered, before they enter on the duties of their appointment, shall take the following oath, to wit: "You swear, that you will truly and faithfully, and according to your best skill and judgment, perform the duties and services assigned you in your commission." As this oath is sufficiently comprehensive to embrace every portion of the duties to be discharged, and is inserted in the act which creates the powers of the committee and points out their duties, and is the *only* one to which there is the remotest reference, we are furnished with a very strong expression of the opinion of the legislature, that no other oath is to be taken. If it had been intended to superadd the sanction of another oath, it is difficult to perceive why *this alone* was embodied in the act ; or why *that* should have been left to mere inference, which could so easily have been stated directly ; or why the legality of the proceedings, on a subject of so general concern, as that of laying out and altering highways, should be made to depend upon mere conjecture, or judicial construction.

We are satisfied, that this statute is not justly chargeable with the equivocal character ascribed to it. It was designed to embrace an entire system of regulations, relating to the subject

*Fairfield,*
June, 1837.

Huntington
*v.*
Birch.

of highways, one of which should prescribe the form of the solemn sanction under which the agents authorized to carry a part of that system into effect, were to act. And accordingly, we find such a provision made, such a sanction imposed, and the form of it recited at length. The legislature have not required, and courts cannot require, any other.

These remarks furnish an answer to the claim, that the statute prescribing the forms of certain oaths, (which is unrepealed,) contains the form of an oath " for a committee to lay out or alter highways," &c. ; and being still in force, is to be observed. We believe this section was retained, in the revision of 1821, by mistake ; it having escaped the attention of the revisors, that the duties of the committee had been essentially varied from what they were at the time the section was *first* enacted ; and thus, that the oath there prescribed, had become both unnecessary and inapplicable. If, however, it were otherwise, we cannot doubt it is superseded, by the express provisions of the act relating to highways, which professes to give the only form of oath deemed requisite and proper by the legislature.

Again ; by reference to the oath prescribed in the general statute relating to oaths, it will be perceived to be substantially the same, as that enacted in 1731, (ed. of 1808. *s.* 30. note 27.), and is predicated on the then existing law as to the duties of the jury or committee, who were to lay out or alter the highway. They are, " according to their best skill and judgment, and according to the precept by which they are summoned, to lay out the way therein mentioned," &c. This form was peculiarly appropriate, when no other duties were imposed upon them, than to lay out and assess damages ; and such only were their duties, for a long period. The *court* was vested with the power of determining whether common convenience and necessity required that the road should be laid out or altered. The jury or *committee* were to lay out or alter, after the adjudication of the court ; and a " precept" or commission was given to them to that effect. Hence, the entire fitness of the expression in the oath, " You swear you will, according to the precept by which you are now summoned, lay out the way therein mentioned," &c. Such language would be inappropriate and altogether out of place, in an oath relating to the present duties of a committee. They are appointed, not abso-

lutely to lay out or alter a road, and assess damages.   No pre-
cept or commission is now given them, which requires that
they *shall* do these acts.   They have a *discretionary* power
confided to them.   " They shall proceed to survey and lay out
the highway, or alteration therein, if they shall be of opinion it
will be of common convenience and necessity," and not other-
wise.   It became proper, upon a change of their duties, to make
a corresponding change in the oath to be administered to them ;
and the legislature, accordingly, varied the phraseology of the
oath, and instead of the words used in the ancient statute, sub-
stituted the concise and comprehensive form which is now in
use, and which requires of the committee, " the faithful per-
formance of the duties of their appointment."   It seems to us,
this view of the question we are now considering, is entirely
conclusive.

This opinion has the sanction, (as we believe) of an uniform
and long established *practice.*   We cannot learn that it has
ever been the usage, since the form of oath prescribed in the
statute relating to highways, was enacted, to administer any
other.   On the contrary, so far as we are informed, parties and
counsel, the profession and the public in general, have enter-
tained the opinion, and acted in accordance with it, that when
*this* oath is administered, the committee are legally qualified to
enter on the duties of their appointment.   We, certainly, feel
no disposition to alter this practice ; more especially, as it is op-
posed to no adjudged case, is conformable to principle, and has
been long acquiesced in.   We apply to it, what, under like
circumstances, we have applied to other cases,—although prac-
tice cannot controul the law, yet where it has been long con-
tinued, uniform and unquestionable, it affords high evidence of
what the law is, and it would require very cogent reasons, at
this day, to change it.   *Hawley* v. *Parrott,* 10 *Conn. Rep.*
486.   *Whittlesey* v. *Fuller,* 11 *Conn. Rep.* 337.   *Camp* v.
*Bates, Id.* 487.

We may remark in addition, that as the committee state,
that they " took the oath required by law," we have a right,
and perhaps, are bound, to presume, in the absence of any find-
ing of facts to the contrary, that they were legally qualified to
act.   In the case of *Husted* v. *Greenwich,* 11 *Conn. Rep.*
383., we said, even if the committee had not annexed to their
certificate, that they were under oath, we are by no means

*Fairfield,*
June, 1837.

Huntington
*v.*
Birch.

*Fairfield,*
June, 1837.

Huntington
*v.*
Birch.

satisfied that the law would not now imply that they were. Sheriffs, constables, and justices of the peace, in their returns of acts done by them in their official capacities, never state that they were under oath, when they performed these acts. And courts of justice are in the constant practice of receiving and acting upon such returns, as if they were accompanied with evidence that the persons signing them had been sworn. We perceive no sufficient reason for changing the opinion there expressed; but on further reflection, our confidence in its correctness is confirmed. If, therefore, the law requires *both* oaths to be taken, we may reasonably infer, there being no proof to the contrary, that they were taken; and if so, the whole foundation of the present objection is removed.

2. Ought the county court to have received the evidence offered in support of the remonstrance? It was rejected, by that court, on the ground that it contradicted their previous finding appearing on the record; and we think it was properly rejected. By the 12th section of the statute relating to highways, (*p.* 269.,) it is provided, that before the appointment of a committee to lay out or alter a highway, is made, notice is to be given (in the manner specified) to the town or towns to be affected by it; and without such notice is given, and without their previous neglect or refusal to act, the court cannot entertain jurisdiction of the subject. We have heretofore decided, in several cases, that the fact that there was such neglect or refusal, is *to be found* by the court; otherwise their proceedings are erroneous. *Waterbury* v. *Darien,* 8 *Conn. Rep.* 162. *Treat* v. *Middletown, Id.* 243. *Plainfield* v. *Packer* & al. 11 *Conn. Rep.* 574. The grounds upon which these decisions rest, apply equally to the fact of *notice.* That also is to be *found* by the court; for their jurisdiction over highways being special and limited, and not arising from their general common law powers, all the facts necessary to give them jurisdiction, must appear to exist, and their finding is the evidence of it. It clearly, then, was the duty of the court, before they proceeded to appoint a committee, to find that notice had been given relating to the highway sought to be laid out or altered; and on an inspection of their record, it appears that, after reciting the petition containing a description of the highway, which the remonstrance avers, was not in the petition when the same was served, and of which they had no legal notice at any time before

the appointment of the committee, and also containing the word "highways" in the plural number, the court find, "that *said* petition was legally served on the select-men of said towns of *Huntington* and *Monroe ;* and that said select-men of said towns, have ever neglected and refused to make *said* alterations in *said highways,* although requested so to do," &c.; and thereupon they proceed to appoint a committee, in pursuance of the provisions of the statute. It is, therefore, apparent, that the court have found, distinctly, that the notice, which the remonstrance negates, was given, and it is now a part of their record. It cannot be necessary to cite authorities to prove, that this record of a court of competent jurisdiction, cannot be collaterally impeached or contradicted—much less to show, that a fact which is found, necessary to give them jurisdiction, and made part of their proceedings, can be collaterally denied and put in issue. And yet, it would seem, that the exception now taken, is opposed to the principles which the whole current of authority establishes. The offer, on the part of the plaintiffs in error, was, to prove, by parol, that the notice found and appearing of record, was not in fact given, thus forming an issue on the verity of the record : and the same court which had made the finding and recorded it, at one of its stated terms, and thereby obtained jurisdiction of the cause, was asked, at a subsequent term, to allow it to be put in issue, and by the admission of parol proof, to falsify its own record.

It was, however, admitted, that a fact found by a court having jurisdiction, if it be such a fact as the court is competent to find, cannot be contradicted, and the finding is conclusive ; but it was claimed, that the fact offered to be proved, in the case before us, was one, the existence of which was essential to the jurisdiction of the court, and being denied, the court were not competent to find it. The fact put in issue, by the remonstrance, was, whether the original petition served on the town embraced the highway "leading from *Derby* bridge, passing near *Huntington* town-house, to the public green in *Monroe ;*" and if not, whether the subsequent insertion of it, was made without the knowledge or consent of the court, or the town. If the petition did not include this highway, it was said, the court could not appoint a committee to examine and alter it ; and they could not hold jurisdiction, by finding the fact that it was included, because it must first

*Fairfield,*
June, 1837.

*Huntington*
*v.*
Birch.

exist, to give them jurisdiction to act at all.   We cannot yield our assent to the doctrine, which this argument advances.   It denies to a court, the power to enquire whether it has jurisdiction.   It assumes that no court can institute an enquiry into facts on which their jurisdiction depends; or, in plainer language, though not more certainly, it asserts, that a court cannot exercise jurisdiction, *if it be denied.*   That this is the result to which the argument pressed upon us, will ultimately arrive, is, we think, quite obvious.   Indeed, such is the result, in its application to the case before us.   To enable the county court to hold jurisdiction, it was necessary they should find notice to have been given relating to the highway which the committee were to examine ; and yet, it is claimed, they had no power to enquire into that fact, because until it was ascertained or admitted, they had no jurisdiction for any purpose.   If, therefore, the defendants in that court, had denied notice, all further proceedings would have been stopped.   This would, certainly, be a very easy and effectual mode of disposing of petitions for laying out or altering highways.   They are not always favourably received, by the towns, who are to incur the expense of making the highways ; and if they can be defeated, simply by a denial of notice, the interposition of the legislature would become indispensable.   No necessity, however, exists for any amendment or alteration of the law on the subject under consideration.   It is always competent for a court to institute enquiries into matters of fact on which their jurisdiction depends.   It is every day's practice, and is a power essential to the due administration of justice, and the maintenance of public and private rights.   There is no substantial distinction, in respect to this power, between a process against a town, and one against an individual ; and if it be competent, in the latter case, to enquire whether the defendant had legal notice, it would seem to be equally competent, where a municipal corporation is a party.

If the principle advanced by the plaintiffs in error, be correct, the remonstrance ought, certainly, to have been held insufficient : for if the court could not take jurisdiction, by *once* finding notice, they could not obtain it, by finding it a *second* or a *third* time.   It would have been as ineffectual in law to give them jurisdiction, had they found the issue as to notice, in favour of the petitioners, or the remonstrants, as it

was to have found it in the first instance, without any formal issue :—for, according to the argument we are considering, all enquiry into the matter of notice, is precluded, when the notice is not admitted, or is denied, because such denial ousts the court of jurisdiction to institute *any* enquiry. The remonstrants insisted, that the court should hear the evidence which they proposed to offer, on the disputed point of notice ; and surely, if they were not authorized to hear it, in a previous stage of the proceedings, because it would be an assumption of jurisdiction, they could acquire no such authority, merely by reason of its being offered under an issue formed on a traverse of the remonstrance. It seems to us, that if the argument of the plaintiffs be tenable, every act done in pursuance of the order and decree of the court, was a legal wrong, which may be redressed by suit. The entry on the land to view, survey and lay out, was a trespass ; and all the proceedings extra-judicial and void. We do not give our sanction to a principle involving such consequences.

We were referred to the case of *Bigelow* v. *Stearns,* 19 *Johns. Rep.* 39., as sustaining the position for which the plaintiff in error contends. We have examined it, and have not been able to discern that it supports the position for which it has been cited. It states the familiar principle, that if a court of limited jurisdiction issues a process, which is illegal, and not merely erroneous ; or if a court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause, without having gained jurisdiction of the person, by having him before it, in the manner required by law, the proceedings are void. But we do not find in it any intimation, that a court cannot enquire into facts necessary to give it jurisdiction. In that case, the court were of opinion, that the statute required the defendant, (who had acted as justice of the peace,) before he could commit, to cause the offender to be brought before him. His personal presence was indispensable to give the justice jurisdiction. The record did not shew, that the plaintiff was present, but merely that the process had been served upon him, by reading. There was no finding that he was present ; and evidence was offered to prove, that the defendant did not cause the plaintiff to appear before him, before he recorded the conviction and issued his warrant of commitment. This was objected to, on the ground that, as the defend-

ant had jurisdiction of the *subject matter*, the record of conviction was a justification, and could not be impeached.    To this objection, the court reply, that jurisdiction of the *person* is as necessary as jurisdiction of the *subject matter ;* and that whenever a statute confers a new power upon justices of the peace, they must proceed in the mode prescribed by the statute. Had the defendant found the fact that the plaintiff was present, at the time of the conviction ; and that finding had become a part of the record ; it cannot be doubted the court would have held it to be a complete justification.

It was, however, asked, is the party who has sustained injury, by reason of the facts set up in the remonstrance, without remedy ?   Is the town to be subjected to the expense of making and keeping in repair the road in question, when it had no notice in fact, that an application for such road had been presented ?   And are material amendments of a petition to be made, without the knowledge of the court and of the adverse party, and to be held conclusive, and the record which contains them, to import absolute verity, so that the injured party is remediless ?   We answer, certainly not.   If the alterations in the petition were made, by mistake, or in  any other manner, without the approbation of the court, or the party affected by them, and he has been guilty of no *laches*, and has suffered loss in consequence, the law has provided an ample remedy, without annihilating the great principles by which the verity of judicial records is sustained.   He may apply to the court, where the proceedings complained of were had, after final judgment, for a new trial of the cause ;—and although it is in their *discretion* to grant or refuse it, it is to be presumed it will be exercised in such a manner as will promote the ends of justice.   It is a legal discretion ; and in a proper case, upon proper and sufficient proof, the petition will be granted as matter of right.

The judgment of the superior court is affirmed.

In this opinion the other Judges concurred.

Judgment affirmed.