STEPHEN CASSIDY ET AL. *v.* JAMES TAIT ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 2—decided July 14, 1953

*John V. Donnelly,* for the appellants (defendants).

*D. H. Cotter,* with whom, on the brief, was *John J. Cotter,* for the appellees (plaintiffs).

BALDWIN, J.  The plaintiffs, patrolmen in the police department of the city of Bridgeport, brought this action by writ dated May 20, 1952, against the board of police commissioners, the superintendent of police and the civil service commission of that city.  They sought an injunction requiring the restoration of their names to a list, established by the commission, of eligible candidates for appointment to duty in the detective bureau, and restraining the defendants from terminating the list or conducting any further examination for candidates until all the plaintiffs have been appointed detectives.  The trial court

rendered judgment declaring the attempted termination of the list of no effect and that the list was then subsisting, but denying any injunctive relief. The defendants have appealed.

The finding of the trial court may be abridged as follows: Within the police department of the city of Bridgeport there is a detective bureau which includes a captain, two lieutenants, fourteen sergeants and nineteen detectives. The charter of the city makes it the duty of the board of police commissioners, hereinafter referred to as the board, to appoint the members of the police department. 15 Spec. Laws 528, § 86, as amended, 15 Spec. Laws 872, § 4. An ordinance adopted by the common council of the city pursuant to the charter (15 Spec. Laws 513, § 53) confided to the board the "general management and control of the police department" and the power to make "all needful rules and regulations for its government." Bridgeport Ordinances § 232 (Rev. 1939). Another ordinance provided for a detective bureau under the authority and control of the board and gave the board "power to assign for service in said bureau from the department . . . a captain and so many other members as said board may from time to time select and designate." Id., § 239.

In 1943, the General Assembly enacted "An Act concerning the Rank of Officers of the Bridgeport Police Department," which provided for assignment by the board of patrolmen to detective duty. 24 Spec. Laws 355. Pursuant to this act, the civil service commission, hereinafter referred to as the commission, held a competitive examination on October 22, 1949, for the purpose of establishing an eligibility list of patrolmen from which assignments could be made to the detective bureau. The notice of this examination stated that it was "not a promotion examination"

and that the law under which it was held "provides that a Patrolman assigned as a Detective continues to have the rank, tenure and rights of a Patrolman." The notice contained no statement whatsoever concerning the duration of the list of eligible candidates which was to be compiled as a result of the examination. The plaintiffs were among forty patrolmen who passed the examination and whose names were included in a list of eligible candidates, numbered in the order of their relative standing. The list was established by the commission on January 19, 1950. On March 27, 1950, the board adopted an amendment to its rules which provided that all lists established by the commission from which assignments of patrolmen to detective duty were to be made should automatically terminate two years after the date of their establishment. This rule was thereafter approved by the commission. The first twenty-two patrolmen on the list have been assigned to detective duty. The plaintiffs, who are among the remaining eighteen, have not been reached for assignment.

In 1951, the General Assembly enacted "An Act concerning Detective Personnel for the Police Department of the City of Bridgeport." 26 Spec. Laws 457. This act, which amended the 1943 act by substituting a complete rewording of it, provided for the promotion of patrolmen to detective duty. On January 4, 1952, the case of *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 90 A.2d 862, was pending on the docket of the Supreme Court of Errors. It involved an interpretation of the civil service act of the city. Proceeding upon the assumption that the list of eligible candidates for assignment to detective duty established on January 19, 1950, would expire on January 19, 1952, the board, on January 14, 1952, at the request of counsel for the plain-

tiffs, extended the duration of the list until June 1, 1952. This action was approved by the commission. A request for a further extension was denied by the board on May 12, 1952.

The plaintiffs claim that they are eligible for appointment to duty as detectives because their names appear on the list established on January 19, 1950, and that the board was without power to terminate the list at the expiration of two years. The defendants, on the other hand, claim that the board was within its power and that the amendment to the rules enacted by it on March 27, 1950, terminated the list on January 19, 1952, or on June 1, 1952. The basic question, however, is whether, as of May 20, 1952, the date of the plaintiffs' writ, the list established on January 19, 1950, upon which their names appear as eligible candidates, was still in full force and effect.

The answer to the problem propounded by this case lies in the determination of the intent and purpose of the pertinent legislation. *State ex rel. Stamford* v. *Board of Purchase & Supplies,* 111 Conn. 147, 161, 149 A. 410; *Kelly* v. *Dewey,* 111 Conn. 281, 284, 149 A. 840. Sound construction requires that statutes be considered in the light of their history, their language, the purpose they are designed to serve and the circumstances surrounding their enactment. *Savings Bank* v. *Wilcox,* 117 Conn. 188, 193, 167 A. 709; *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 81, 20 A.2d 455.

The 1943 act (24 Spec. Laws 355) was adopted while World War II was in progress. Normal procedures were greatly disrupted. There was a critical need of manpower. The apparent purpose of the legislature was to establish a method of recruiting patrolmen for temporary assignment to detective duty so as to provide needed service without prej-

udicing the status of other members of the police department who were absent in the armed forces. To that end, the 1943 act gave the board power to enact, with the approval of the commission, rules "concerning the *assignment* of patrolmen to detective duty" (italics supplied). The assignments were to be made from a list of qualified patrolmen established by competitive examinations. The men assigned to perform detective duty were to continue their rank, tenure and rights as patrolmen. An assignment was not to be considered a promotion, nor was a reassignment from detective duty to other police work a demotion which would entitle the patrolmen reassigned to any of the rights or remedies set forth in the civil service act of the city (22 Spec. Laws 269, § 21). Any extra compensation received for detective duty was not to be considered in calculating pension payments. The act gave the board power to make at will assignments to detective duty from the list to be established and reassignments thereafter to other police work. No provision limiting the duration of the list established was necessary because the board, by exercising this power, could eliminate the list at any time. In short, as to detective duty, the intent and purpose of the legislature was to create a special exception from the ordinary requirements of the civil service act.

In conducting the examination for, and making the assignments from, the list established in 1950, the commission and the board purported to act solely under the 1943 statute. The notice for the examination clearly stated that it was not a promotion examination. It was merely a departmental examination to determine which patrolmen were qualified for detective duty. A patrolman was to hold his assignment in the detective bureau only at the will of the board—a situation completely at variance with the

principles of tenure and seniority which are distinguishing characteristics of any civil service system. The parties concede in their briefs that qualification by examination and assignment to detective duty under the 1943 act did not give a patrolman any civil service status as a detective.

The fact that the parties relied only upon the 1943 act was further recognized by the plaintiffs when they asked for an extension of the two-year limitation imposed by the board's amendment to the rules. It was admitted by the defendants when the board granted the extension and the commission approved it. The civil service act specifically provides that the "commission shall cancel such portion of any list as has been in force for more than two years." 22 Spec. Laws 265, § 9. No extension could be granted in the face of this legislative mandate unless the parties were acting pursuant to the 1943 act. The status of the plaintiffs was acquired under, and depends on, the 1943 statute. If the plaintiffs have any right to appointment, it must be one that they gained, and that they still hold, by virtue of that act.

When, in 1951, the General Assembly enacted "An Act concerning Detective Personnel for the Police Department of the City of Bridgeport" (26 Spec. Laws 457), the 1943 statute was in effect repealed. The provisions of the 1951 act are significant when compared with corresponding provisions in the earlier statute. .The board, with the approval of the commission, was to "enact rules concerning the *promotion* of patrolmen to detective duty" (italics supplied). While patrolmen performing detective duty were to continue to have the tenure and rights of patrolmen, assignment to detective duty was specifically designated a promotion, and reassignment to other police work was to be deemed a demotion, giv-

ing any detective reassigned all the rights and remedies provided in § 21 of the civil service act (22 Spec. Laws 269). Compensation received by any detective was to be considered in calculating pension payments. In short, this act confers upon a patrolman who has taken a competitive examination, has qualified and has been assigned to detective duty the status of detective, with full civil service rights as such. The intent of the statute is plain. In 1951, the war was over. The critical demand for manpower was at an end. Normal procedures could be resumed. The purpose of the legislature was to terminate the special procedures provided under the 1943 act.

When the 1943 and 1951 statutes are viewed in this light, the question of the legality of the March 27, 1950, amendment to the rules which placed the two-year limitation upon the list established under the 1943 act becomes academic. The list which contains the names of the plaintiffs, having been established under the 1943 act, has become inoperative. It was nullified when that act was repealed in 1951. See *State ex rel. Levy* v. *Pallotti,* 133 Conn. 334, 344, 51 A.2d 136. The plaintiffs, therefore, are not entitled to assignment until they have been examined and have qualified under the later statute.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.