George J. MONTANO et al., Plaintiffs-Appellants,

v.

Richard C. LEE, Mayor, et al., Defendants-Appellees.

Nos. 559, 560, Dockets 32410, 32411.

United States Court of Appeals
Second Circuit.

Argued June 19, 1968.

Decided Aug. 6, 1968.

Robert I. Berdon, New Haven, Conn. (Berdon, Berdon & Young, New Haven, Conn., of counsel), for appellants.

Sonja Goldstein, Leander C. Gray, New Haven, Conn., for appellees Peter J. Kelly, Victor DeCarlo, Robert Rubin, Carl Johnson, Nicholas DeCilla, Vincent Mauro, Raymond Moore, Blaze L. Garbatini, William Mrowka and Salvatore Ferrauolo.

Thomas F. Keyes, Jr., New Haven, Conn. (Office of the Corporation Counsel, New Haven, Conn.), for appellees Richard C. Lee, Joseph Gianelli, Roger J. Frechette and Board of Aldermen of the City of New Haven.

Before MOORE and FRIENDLY, Circuit Judges, and BRYAN,* District Judge.

* Of the Southern District of New York, sitting by designation.

MOORE, Circuit Judge:

The appellants, candidates for election to the New Haven Board of Aldermen, brought this action in the United States District Court for the District of Connecticut, contending that they were duly elected at the last election, held November 7, 1967, by operation of the Connecticut Minority Representation Statute, Conn.Gen.Stat. § 9–167a. This case arose as a result of a decision in an action pending before the Connecticut District Court since January, 1966, involving the apportionment of the principal legislative body of the City of New Haven known as the Board of Aldermen. It is therefore necessary to outline the history of that litigation.

On March 24, 1966, the Connecticut District Court declared the then current districting plan for the New Haven Board of Aldermen to be violative of the equal protection clause due to the inequalities in population of the territories (wards) from which said aldermen were elected. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Connecticut legislature then enacted a redistricting plan that created three wards for each assembly district, one alderman to each ward, and a board with a total of thirty aldermen. On June 8, 1967, the District Court held that this new plan was also invalid as violative of the equal protection clause, and enjoined the holding of any further election for the Board of Aldermen unless it was elected on an at-large basis or under a constitutionally acceptable redistricting plan. By amendment to this order, the Court held that the Connecticut Minority Representation Statute [1]

---

1. Section 9–167a (Conn.Gen.Stat.1968 Rev. as amended), referred to in this opinion as "Minority Representation Statute" reads as follows:

"(a) The maximum number of members of any board, commission, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state or such political subdivision, who may be members of the same political party shall be as specified in the following table:

| Column I | Column II |
| --- | --- |
| Total Membership | Maximum from one Party |
| 3 | 2 |
| 4 | 3 |
| 5 | 4 |
| 6 | 4 |
| 7 | 5 |
| 8 | 5 |
| 9 | 6 |
| More than 9 | Two-thirds of total membership. |

(b) Prior to any election for or appointment to any such body, the town clerk, in cases of elections, and the appointing authority, in cases of appointments, shall determine the maximum number of members of any political party who may be elected or appointed to such body at such election or appointment. Such maximum number shall be determined for each political party in the following manner: From the number of members of one political party who are members of such body at the time of the election or appointment, subtract the number of members of such political party whose terms expire prior to the commencement of the terms for which said election or appointment is being held or made and subtract the balance thus arrived at from the appropriate number specified in column II of subsection (a) of this section. (c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The town clerk shall prepare a list of the candidates ranked from top to bottom according to the number of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such po-

was inapplicable to the November 7, 1967 election that it had ordered to be held on a City-wide at-large basis in the absence of a valid redistricting plan. That statute provides in part that "the maximum number of members of any board, commission, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, except any such * * * body whose members are elected on the basis of a geographical division of the state or such political subdivision, who may be members of the same political party" shall be two-thirds of the members. The statute thus assures that the bodies to which it applies will contain at least a one-third representation of the minority party or parties.

As it was not possible for the Board of Aldermen or a Charter Revision Commission to redistrict in time for the upcoming November election, and as the parties were unable to agree on a stipulation for the election of aldermen by geographical districts, an at-large election was ordered. An appeal was taken from that order to this court. On October 5, 1967 we sustained the District Court's order as to the at-large election, but vacated the decision on the applicability of the Minority Representation Statute as premature on the ground that the parties should first obtain a State court determination of the question "if at all possible" and that until that time the District Court should abstain. 384 F.2d 172 (2d Cir.1967).

On November 7th the City of New Haven conducted an election for thirty members of the Board of Aldermen on an at-large basis. Each of the two political parties (Republican and Democratic) which actively participated in that election nominated thirty candidates for aldermen. The thirty Democratic aldermanic candidates received the highest number of votes and were declared elected to the Board of Aldermen by the Moderator of the election. He thereby rejected the claim of the 10 Republican aldermanic candidates who received the highest number of votes of any other Republicans that, by operation of the Minority Representation Statute, they had been elected to the Board of Aldermen instead of the 10 Democratic candidates who had received the least number

litical party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election. (d) If an unexpired portion of a term is to be filled at the same time as a full term, the unexpired term shall be deemed to be filled before the full term for purposes of applying this section. At such time as the minority representation provisions of this section become applicable to any board, commission, committee or body, vacancies thereafter occurring shall be filled by election or appointment of a member of the same political party as that of the vacating member. (e) Nothing in this section shall be construed to repeal or modify any general or special act which provides for a greater degree of minority representation than is provided by this section. (f) Nothing in this section shall deprive any person who is a member of any such body on July 1, 1960, of the right to remain as a member until the expiration of his term. (g) For the purposes of this section, a person shall be deemed to be a member of the political party on whose enrollment list his name appears on the date of his appointment to, or of his nomination as a candidate for election to, any office specified in subsection (a) of this section, provided any person who has applied for erasure or transfer of his name from an enrollment list shall be considered a member of the party from whose list he has so applied for erasure or transfer for a period of six months from the date of the filing of such application and provided further any person whose candidacy for election to an office is solely as the candidate of a party other than the party with which he is enrolled shall be deemed to be a member of the party of which he is such candidate." (1959, P.A. 665, Sec. 1–6; 1963, P.A. 592)

of votes of any of the Democratic candidates. An appeal was taken by the Republican candidates to the Connecticut Superior Court for New Haven County, and that court reserved the questions and issues to the Supreme Court of Connecticut.

The Connecticut Supreme Court, on April 2, 1968, rendered a decision declining to determine the applicability of the Minority Representation Statute. That Court noted that the election ordered in this case, "the legality and fairness of which the plaintiffs in the case before us would test under § 9–328 of the General Statutes (Rev. to 1964), is a sui generis election held at the direction of, and under the supervision of, a federal court. * * * The first two questions reserved, which seek an answer to the applicability and constitutionality of § 9–167a of the General Statutes (Rev. to 1964) in New Haven aldermanic elections in general, and the fifth question as to the efficacy of § 9–328 in enforcing § 9–167a in general obviously refer to elections held under state law." Under those circumstances, the Court held:

"The New Haven aldermanic election of November, 1967, is solely a creature of the United States District Court. The question of what candidates were elected is that court's prerogative to determine. Furthermore, that court obtained original jurisdiction and has expressly retained jurisdiction to decide the question." Hoblitzelle v. Frechette, et al., Conn., 240 A.2d 864 (1968).

The State courts having declined to pass on the issue, the Republican aldermanic candidates brought this action in the District Court. After a hearing, the court adhered to its earlier ruling that the Minority Representation Statute was inapplicable to the November election and ruled that all thirty Democratic candidates were duly elected to the Board of Aldermen. This appeal was taken from that judgment and order.

■ The District Court agreed with the Connecticut Supreme Court that the election was *sui generis* and that it was a federal election not subject to all the ordinary state election law procedures. The court also observed that the at-large election was a unique situation not likely to reoccur:

"If the newly appointed charter revision committee should fail in the performance of its duties, the Court has already named a master, who will constitutionally carry out this task promptly under the Court's supervision. The restoration of ward-elected representatives would thus eliminate completely and permanently any claim to minority representation."

The Court held that under those circumstances it was within its equitable powers to hold the statute inapplicable. We agree. We are also of the opinion that the Minority Representation Statute was not intended to apply to elections of general legislative bodies, such as the New Haven Board of Aldermen.[2]

The Minority Representation Statute, by its terms, only applies to a "board, commission, committee or similar body of the state * * *." Neither the word "board" nor the word '"commission" nor the word "committee" is one ordinarily used to refer to a body with general legislative powers. In view of the many cities in Connecticut whose legislative bodies are called "councils," the legislature would have used that word if it meant to have such bodies covered. In addition, there are several Connecticut statutes specifically calling for minority representation on certain bodies.[3] Of those, the only body with

2. We therefore find it unnecessary to decide whether applying the statute to an aldermanic election would violate the equal protection clause of the fourteenth amendment.

3. Conn.Gen.Stats. § 9–188 (Selectmen); § 9–190 (Registrars of Voters); § 9–197 (Assessors); § 9–199 (Boards of Tax Review); § 9–200 (Constables); § 9–204 (Boards of Estimate); § 9–252 (Justices of the Peace).

any similarity to the Board of Aldermen is the office of Selectmen. Since the Connecticut legislature has provided explicitly for minority representation on that semi-legislative body, it seems reasonable to infer that if the legislature had intended to take the radical step of making the Minority Representation Statute applicable to all legislative bodies (presumably including itself), it would have passed a specific enactment to that effect rather than relying on a tortuous construction of § 9–167a. It also seems likely that if the legislature had intended to extend the principle of minority representation to legislative as well as administrative bodies, it would have adopted an election procedure similar to that used for Selectmen whereby the number of candidates from any one party for whom the voter may cast his ballot is limited (§ 9–188) rather than the procedure under § 9–167a which can result in political parties nominating, and the electorate voting for, more candidates than they can possibly elect if the list of candidates from any one party on the ballot is greater than the number of candidates which may be elected from any party.

▮▮ There has been no decision of the Connecticut courts on the applicability of the Minority Representation Statute to general legislative bodies and the legislative history sheds no light on the question. However, for the reasons given above, it seems clear to us that the statute was meant to cover only boards of tax review, boards of finance, zoning commissions, library committees and "similar" bodies whose legislative powers, if any, are strictly circumscribed. In addition, we find support in the fact that the Connecticut District Court came to the same conclusion in its initial decision (vacated by this court as premature) and in the fact that the Attorney General of the State of Connecticut, whose opinion is entitled to weight, has concluded that § 9–167a "is not intended to apply to legislative bodies." (Opinion dated October 11, 1966.)

▮▮ There is also no question that a federal district court has some discretion in an apportionment case as to the equitable remedy it shall afford those who have shown their votes to be debased. See Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); see also 369 U.S. 186, 250–251, 82 S.Ct. 691, 7 L.Ed.2d 663 (Douglas, J., concurring). In this case the wards from which the aldermen were to be elected were shown to be malapportioned. Under the circumstances of this case, the District Court properly ordered an at-large election. See Lucas v. Colorado General Assembly, 377 U.S. 713, 731 n. 21, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964). The question of minority representation on the New Haven Board of Aldermen arose only because the election was at-large in accordance with the court's order rather than by geographical subdivision as it would have been in the absence of federal intervention. Even if we were to assume *arguendo*— contrary to our belief—that the statute was intended to cover general legislative bodies, the District Court correctly held that the least amount of interference with the normal municipal election procedure would obtain by holding the statute inapplicable to the November election. We are in agreement with that decision and therefore affirm on that ground as well.