JACQUELINE J. ANDERSON *v*. ROBERT F. LUDGIN ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and PETERS, Js.

Argued May 11—decision released August 1, 1978

*Allan B. Taylor*, with whom was *Sharon S. Tisher*, for the appellant-appellee (plaintiff).

*David T. Ryan*, with whom was *Lawrence A. Cox*, for the appellee-appellant (named defendant).

*Richard M. Cosgrove*, deputy corporation counsel, for the appellees-appellants (defendants George A. Athanson et al.).

SPEZIALE, J. The primary issues raised on this appeal are whether the minority representation statute, General Statutes § 9-167a,[1] applies to local legislative bodies such as the Hartford city council, and, if so, whether the statute, as applied, is unconstitutional.

The relevant facts are not in dispute: At the November 8, 1977 election, the voters of the city of

[1] "[General Statutes (as amended by Public Acts 1977, No. 77-245)] Sec. 9-167a. MINORITY REPRESENTATION. (a) The maximum number of members of any board, commission, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state or such political subdivision, who may be members of the same political party shall be as specified in the following table:

| COLUMN I | COLUMN II |
|---|---|
| Total Membership | Maximum from one Party |
| 3 | 2 |
| 4 | 3 |
| 5 | 4 |
| 6 | 4 |
| 7 | 5 |
| 8 | 5 |
| 9 | 6 |
| More than 9 | Two-thirds of total Membership |

(b) Prior to any election for or appointment to any such body, the [town] MUNICIPAL clerk, in cases of elections, and the appointing authority, in cases of appointments, shall determine the maximum number of members of any political party who may be elected or appointed to such body at such election or appointment. Such maximum number shall be determined for each political party in the following manner: From the number of members of one political party who are members of such body at the time of the election or appointment, subtract the number of members of such political party whose terms expire prior to the commencement of the terms for which such election or appointment is being held or made and subtract the balance thus arrived at from the appropriate number specified in column II of subsection (a) of this section.

(c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The [town] MUNICIPAL clerk shall prepare a list of the candidates ranked from top to bottom according to the number

Hartford elected, on an at-large basis, all nine members of the city council. The plaintiff, Jacqueline J. Anderson, an enrolled Republican, appeared on the ballot as a nominee of the Republican party for the position of member of the council. The defendant Robert F. Ludgin, an enrolled Democrat, appeared on the ballot as a petitioning candidate running without party designation for the position of member of the council.

of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such political party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election.

(d) If an unexpired portion of a term is to be filled at the same time as a full term, the unexpired term shall be deemed to be filled before the full term for purposes of applying this section. At such time as the minority representation provisions of this section become applicable to any board, commission, committee or body, any vacancy thereafter occurring which is to be filled by appointment shall be filled by the appointment of a member of the same political party as that of the vacating member.

(e) Nothing in this section shall be construed to repeal, modify or prohibit enactment of any general or special act or charter which provides for a greater degree of minority representation than is provided by this section.

(f) Nothing in this section shall deprive any person who is a member of any such body on July 1, 1960, of the right to remain as a member until the expiration of his term.

(g) For the purposes of this section, a person shall be deemed to be a member of the political party on whose enrolment list his name appears on the date of his appointment to, or of his nomination as a candidate for election to, any office specified in subsection (a) of this section, provided any person who has applied for erasure or transfer of his name from an enrolment list shall be considered a member of the party from whose list he has so applied for erasure or transfer for a period of six months from the date of the filing of such application and provided further any person whose candidacy for election to an office is solely as the candidate of a party other than the party with which he is enrolled shall be deemed to be a member of the party of which he is such candidate.

The six nominees of the Democratic party, all enrolled members of that party, received the six highest vote totals at the election. The two candidates who received the seventh and eighth greatest number of votes were enrolled members and nominees of the Republican party. The defendant Ludgin received the ninth greatest number, and the plaintiff received the tenth greatest number. The defendants George A. Athanson, mayor of the city of Hartford, Robert J. Gallivan, city and town clerk of the city of Hartford, and John T. Walsh, director of finance of the city of Hartford, acting collectively in their capacity as board of canvassers of the city of Hartford, and Salvatore Bramante, head moderator of the city of Hartford for the election, hereinafter city defendants, declared and certified the nine candidates with the greatest number of votes, including the defendant Ludgin, to have been elected to the city council. The city defendants did not declare and certify the plaintiff to have been so elected. The plaintiff thereupon filed a petition in the Superior Court to compel the city defendants to declare and certify her election, pursuant to General Statutes § 9-328.[2]

[2] "[General Statutes] Sec. 9-328. CONTEST IN ELECTION OF MUNICIPAL OFFICERS AND NOMINATION OF JUSTICES OF THE PEACE. Any person claiming to have been elected to any municipal office, or nominated at a primary to the office of justice of the peace, but not to have been declared so elected or nominated, or any candidate for any such office claiming to have been aggrieved by any ruling of the moderator at an election for any such office or a primary for justice of the peace, or any such candidate claiming that there has been a mistake in the count of votes cast for any such office at any such election or primary, may, within ten days after the date of the election or primary, bring his complaint to any judge of the superior court, in which he shall set out the claimed errors of the moderator or the claimed errors in the count. Such judge shall forthwith order a hearing to be had upon such complaint, upon a day not more than five nor less than three days from the making of such order, and shall cause notice of not less than three nor more than five days to

The trial court concluded that § 9-167a was applicable to legislative bodies such as the council, but that it was unconstitutional as applied to the defendant Ludgin. Accordingly, the plaintiff's petition was dismissed.

The parties, on appeal, have challenged the trial court's conclusions as follows: The plaintiff has appealed from the court's determination that the statute is unconstitutional. The city defendants have cross-appealed from the court's conclusion that the statute applies to legislative bodies such as the Hartford city council. The defendant Ludgin has cross-appealed, claiming that the statute did not

---

be given to any candidate or candidates whose election or nomination may be affected by the decision upon such hearing, and to any other party or parties whom such judge deems proper parties thereto, of the time and place for the hearing upon such complaint. Such judge or, in case of his inability, a judge designated by the chief judge of the superior court, shall, on the day fixed for such hearing and without unnecessary delay, proceed to hear the parties. If sufficient reason is shown, he may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made, and he shall thereupon, if he finds any error in the rulings of the moderator or any mistake in the count of the votes, certify the result of his finding or decision to the secretary of the state before the tenth day succeeding the conclusion of the hearing. Such certificate of such judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such moderators and to the correctness of such count, and shall operate to correct the returns of such moderators or presiding officers, so as to conform to such finding or decision, except that this section shall not affect the right of appeal to the supreme court for the reservation of questions arising thereon, and it shall not prevent such judge from reserving such questions of law, by consent of all parties, for the advice of the supreme court. Such judge may, if necessary, issue his writ of mandamus, requiring the adverse party and those under him to deliver to the complainant the appurtenances of such office, and shall cause his finding and decree to be entered on the records of the superior court in the proper county."

apply to him or, if it did, that it violated the constitutional rights to equal protection of the law and to freedom of speech and association.[3]

We first consider whether § 9-167a applies to the election of members to the Hartford city council. In 1966, seven years after the passage of the statute,[4] the attorney general issued an opinion stating that § 9-167a was not applicable to legislative bodies. Opinion of Attorney General, October 11, 1966. But the issue has never been decided by this court. Connecticut cases that have analyzed § 9-167a have not decided whether the statute applies to municipal legislative bodies elected on a partisan, at-large basis, and they are therefore of limited value.[5] In

[3] The plaintiff and the defendant Ludgin have also claimed error in the court's findings concerning the defendant Ludgin's candidacy. The plaintiff has contended that the court erred in overruling her claim as to relevancy and admitting paragraph nine of the stipulation of the parties, that Ludgin's candidacy was opposed by the Hartford Democratic party. The defendant Ludgin has challenged the court's determination that he was a candidate of the Democratic party. Because of the manner in which we decide this appeal, it is not necessary to address these claims.

[4] Public Acts 1959, No. 665.

[5] In *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 224 A.2d 711 (1966), this court found § 9-167a applicable to *"appointive bodies,* such as Hartford's board of tax review." Id., 242. (Emphasis added.) The court went out of its way to emphasize: "[W]e express no opinion" as to whether the statute applies to the elected members of the Hartford common council. Ibid. The clear language of *Bennett* simply does not support the assertion made in the dissenting opinion that *Bennett* held § 9-167a applicable to *every municipal body.* On the contrary, the *Bennett* court explicitly stated: "We find no suggestion of an intent in § 9-167a that, *if minority representation cannot be achieved under the terms of the statute as to an elective body in a particular municipality,* the General Assembly did not intend to have the statute apply to an appointive body in the same municipality. . . . [Section] *9-167a could apply to the board [of tax review] whether it did, or did not, apply to the council."* Id., 242-43. (Emphasis added.)

Subsequently, in *State ex rel. Maisano* v. *Mitchell,* 155 Conn. 256, 231 A.2d 539 (1967), the issue before the court was "whether the

*Montano* v. *Lee,* 401 F.2d 214 (2d Cir. 1968), how-
ever, that precise question was met.[6]  In deciding
that § 9-167a did not apply to legislative bodies, the
Court of Appeals for the second circuit reasoned:
"The Minority Representation Statute, by its terms,
only applies to a 'board, commission, committee or
similar body of the state.'  Neither the word 'board'
nor the word 'commission' nor the word 'committee'
is one ordinarily used to refer to a body with gen-
eral legislative powers.  In view of the many cities
in Connecticut whose legislative bodies are called
'councils,' the legislature would have used that word
if it meant to have such bodies covered. . . .  [I]f
the legislature had intended to take the radical step
of making the Minority Representation Statute
applicable to all legislative bodies . . . it would
have passed a specific enactment to that effect

second taxing district of the city of Norwalk is a political subdivision
of the state within the meaning of § 9-167a."  Id., 259.  *As to this*
*precise issue,* the court found:  "The language of the statute is
clear and unambiguous.  The second taxing district of the city of
Norwalk was and is a political subdivision of the state, and the provi-
sions of § 9-167a applied to the election of the board of district
commissioners in the second taxing district."  Id., 264.

[6] In spite of the unique situation presented in *Montano* v. *Lee,*
401 F.2d 214 (2d Cir. 1968), which involved a special at-large election
ordered by the federal district court pending reapportionment of
New Haven's wards; id., 216–17; cf. *Hoblitzelle* v. *Frechette,* 156
Conn. 253, 264–65, 240 A.2d 864 (1968); the very issue we have
before us actually was decided by the Second Circuit.  And although
we are not bound by a federal court's interpretation of state law;
*Glenn* v. *Field Packing Co.,* 290 U.S. 177, 178, 54 S. Ct. 138, 78
L. Ed. 252 (1933); cf. *England* v. *Medical Examiners,* 375 U.S. 411,
424, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964) (Douglas, J., concur-
ring); it should be accorded some weight.  20 Am. Jur. 2d, Courts,
§ 225 (1965).

*LoFrisco* v. *Schaffer,* 341 F. Sup. 743 (D. Conn. 1972), sub-
sequently held that § 9-167a is constitutional as applied to elec-
tions for local boards of education.  It is obvious that the federal
district court which decided that case would consider itself bound
by the previous Second Circuit holding in *Montano* that the statute
was not applicable to elections for *local legislative bodies.*

rather than relying on a tortuous construction of § 9-167a. . . . In addition, we find support in the fact that . . . the Attorney General of the State of Connecticut, whose opinion is entitled to weight, has concluded that § 9-167a 'is not intended to apply to legislative bodies.' (Opinion dated October 11, 1966)." Id., 217–18.

The *Montano* court had no Connecticut cases on which to rely, and turned to the quoted sources to interpret § 9-167a. Our examination of the legislative history and of the practical construction given the statute must likewise guide our determination of the question of applicability.

Statutes are to be construed by considering " 'their legislative history, their language, their purpose, and the circumstances surrounding their enactment.' *Mack* v. *Saars,* 150 Conn. 290, 294, 188 A.2d 863; *Delinks* v. *McGowan,* 148 Conn. 614, 618, 173 A.2d 488; *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808." *City Savings Bank* v. *Lawler,* 163 Conn. 149, 157, 302 A.2d 252 (1972).

If the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977); *Houston* v. *Warden,* supra, 251; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971). The language of § 9-167a[7] appears to be clear on its face, but when considered in light of the differing vocabulary used by the state's 169 municipalities for their

---

[7] See footnote 1, supra.

local legislative bodies, it is ambiguous. For example, many localities use the word "council" to designate their legislative bodies. The phrase "board, commission, committee or similar body" might be interpreted to include a council if we were to read it expansively. But "[c]ourts cannot, by construction, read into statutes provisions which are not clearly stated. *Robinson* v. *Guman,* 163 Conn. 439, 444, 311 A.2d 57; *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 415, 311 A.2d 65." *Houston* v. *Warden,* supra, 251. *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974). Although the phrase "similar body" may be read to allow for some variation; see *Proctor* v. *Sachner,* 143 Conn. 9, 14, 118 A.2d 621 (1955); it may not be used to expand the general area set out by the enumerated category. 2A Sutherland, Statutory Construction (4th Ed. 1973) § 47.18. Because there is no specific reference to "council" or "legislative body" in the statute, it must be read to exclude such bodies from its scope.

Furthermore, § 1-1 (m) of the General Statutes provides: "[T]he words 'legislative body,' as applied to unconsolidated towns, shall mean the town meeting; as applied to cities and consolidated towns and cities, shall mean the board of aldermen, council or other body charged with the duty of making annual appropriations; as applied to boroughs and consolidated towns and boroughs, shall mean the board of burgesses; as applied to all other districts and associations, shall mean the district committee or association committee or other body charged with the duty of making annual appropriations." The statute was obviously available as a referent, if the legislature had meant to include bodies such as the Hartford city council in § 9-167a.

It is difficult to understand why the drafters of the minority representation law did not simply use the term "legislative body" if that was their intent.

Where, as here, the language of a statute is not *absolutely* clear, its meaning can often be determined by referring to the legislative history of its enactment. "[W]here the language used in the act makes uncertain . . . just what was in the legislative mind, the court should, among other things, look to the history of the act, the objective it was designed to meet, and the policy underlying it. *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846; *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 A. 912." *Wilson* v. *West Haven,* 142 Conn. 646, 654, 116 A.2d 420 (1955).

Although the debate surrounding passage of a law may be an aid to statutory construction, the discussion that occurred when § 9-167a was enacted sheds no light on the legislature's purpose; it is too brief and ambiguous to offer guidance.[3] The title and stated purpose of the legislation are, however, also valid aids to construction; *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974); *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals,* 162 Conn. 50, 55, 291 A.2d 204 (1971); and in this instance are clear directives. The title and purpose of § 9-167a indicate that the statute is

---

[3] All the parties have sought to rely on other legislative events that are technically not part of an inquiry into legislative history. Public hearings have usually been held inadmissible for such purposes. *Spring* v. *Constantino,* 168 Conn. 563, 571–72 n.4, 362 A.2d 871 (1975); *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233, 63 A.2d 154 (1946). Nor do the legislative histories of subsequent nonrepealing acts, or of unpassed amendments, reveal the intent of the legislature that enacted § 9-167a. *Mack* v. *Saars,* 150 Conn. 290, 299–300, 188 A.2d 863 (1963). In this case, moreover, we are not persuaded that such information is helpful in construing the law.

not applicable to the Hartford city council. The stated title and purpose of senate bill 505 of the 1959 legislative session (File No. 1292),[9] the precursor of § 9-167a, were "[t]o provide for minority representation on state and municipal boards and commissions." The proposed legislation stated that it would apply to a "board, commission, authority or other agency." Ibid. Although a title and statement of purpose are alone not controlling; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 98, 291 A.2d 721 (1971); it is clear that the use of the phrase "or other agency" contradicts the plaintiff's claim that the statute applies to local legislative bodies.

It is significant, moreover, to note that, despite the invitation to do so left open by *Montano,* supra, and by the attorney general's opinion, Connecticut's minority representation law has not been amended to add any reference to "legislative bodies." Although the legislature did in fact amend § 9-167a in both 1976 and 1977, it did not change the statute in that regard. Public Acts 1976, No. 76-173, and Public Acts 1977, No. 77-245.

Where the language is ambiguous and the legislative history is not enlightening, it is often very helpful in interpreting a law to look to the manner in which it has been applied. Indeed, courts should "accord great deference to the construction given the statute by the agency charged with its enforcement." *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (1972) (Loiselle, J., concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Clark* v. *Town Council,* 145 Conn. 476, 485, 144 A.2d 327 (1958). "[W]here the

---

[9] Public Acts 1959, No. 665.

governmental agency's time-tested interpretation is 'reasonable' it should be accorded 'great weight' by the courts. *Investment Company Institute* v. *Camp,* 401 U.S. 617, 626–27, 91 S. Ct. 1091, 28 L. Ed. 2d 367." *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975).

Section 9-167a has been interpreted consistently to exclude legislative bodies. The opinion issued by the attorney general in 1966, and relied upon by the Court of Appeals in *Montano,* supra, was in response to an inquiry by the secretary of the state concerning amendments to the town charter of Watertown. The attorney general concluded that "section 9-167a is limited in its application to executive boards, commissions, committees or similar bodies and is not intended to apply to legislative bodies." Opinion of Attorney General, October 11, 1966. The 1966 opinion established the pattern of enforcement that is still in effect. Only last year the elections attorney for the secretary of the state, relying upon the reasoning in *Montano,* followed that pattern of enforcement by advising another candidate for the Hartford city council that § 9-167a was not applicable to municipal legislative bodies, and directed the candidate to "any applicable provisions of the Hartford City Charter, rather than of the state election laws." Letter of Elections Attorney, November 4, 1977, p. 1.

Thus, since its passage, § 9-167a has never been applied to local legislative bodies. Since at least 1966, towns affected by the statute have had a clear and unchanged directive to apply it only to non-legislative bodies. The practical construction given § 9-167a has extended over a decade, and towns have come to rely upon this " 'high evidence of what the

law is.' *Huntington* v. *Birch,* 12 Conn. 142, 149; *Mattoon's Appeal,* 79 Conn. 86, 90, 63 A. 784." *Wilson,* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420 (1955). Absent a plain statutory directive, and given the brief legislative history, we may place great weight on the unbroken application of the law by its enforcers over many years.

Accordingly, we hold that § 9-167a is not applicable to local legislative bodies like the Hartford city council. It is consequently not necessary to reach the constitutional issues raised by the plaintiff in her appeal and by the defendant Ludgin in his cross appeal. See *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring); *Pi* v. *Delta,* 175 Conn. 527, 534, 400 A.2d 709 (1978).

There is no error.

In this opinion COTTER, C. J., and PETERS, J., concurred. LOISELLE, J., concurred in the result.

BOGDANSKI, J. (dissenting). The Connecticut minority representation statute (§ 9-167a) applies by its own terms to "*any* board, commission, committee or similar body of the state or *any political subdivision* thereof, whether elective or appointive, except any such board, commission, committee or body whose members are elected on the basis of a geographical division of the state or such political subdivision . . . ." (Emphasis added.)

The meaning and intent of a statute is to be ascertained from the language itself. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506 (1967). This court has already held that "[t]he language of the statute [§ 9-167a] is clear and

unambiguous." *State ex rel. Maisano* v. *Mitchell,* 155 Conn. 256, 264, 231 A.2d 539 (1967). Where the language is clear and unambiguous there is no need for statutory construction. *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971). Courts are not permitted to read into a statute what is not there. " 'We cannot "search out some intent which we may believe the legislature actually had and give effect to it . . . we are confined to the intention which is expressed in the words it has used." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128.' " *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); *Madison Education Assn.* v. *Madison,* 174 Conn. 189, 192, 384 A.2d 361 (1978).

The defendants, however, claim that § 9-167a embodies an unwritten distinction between administrative and legislative bodies. No such distinction is possible in view of this court's precise statement as to the meaning of the statute. In *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 241, 224 A.2d 711 (1966), this court stated that § 9-167a, but for two exceptions, *applies to every municipal body,* whether elective or appointive: the first exception being any public body the members of which are elected on the basis of a geographical division of a municipality; and the second permitting any general or special act to provide for a greater degree of minority representation than is provided by the statute. Neither of the exceptions applies to this case.

Public Acts 1957, No. 13, § 1, now General Statutes § 1-1 (m), provides in part that "the words 'legislative body,' as applied to . . . towns and cities, shall mean the *board* of aldermen, *council* or other body charged with the duty of making annual

appropriations." (Emphasis added.) Public Acts 1957, No. 465, § 7, now General Statutes § 7-193, also enacted two years before § 9-167a, permits a town, city, or borough to have as a legislative body a *board* of selectmen, *council, board* of directors, *board* of aldermen or *board* of burgesses. In enacting a law, the legislature is presumed to know of existing relevant statutes and to intend to create a consistent body of law. *Citrano* v. *Berkshire Mutual Ins. Co.,* 171 Conn. 248, 255, 368 A.2d 54 (1976). Therefore, we must presume that the legislature in enacting § 9-167a in 1959 knew that the words "board" and "council" as used in existing statutes were meant to encompass legislative bodies.

Section 9-167a was responsive to the "overriding desire of the General Assembly to compel minority representation by limiting the number of members of any one political party on *any* municipal body." (Emphasis added.) *State ex rel. Bennett* v. *Glynn,* supra, 242. "The obvious purpose of the statute is to prevent a situation wherein a simple majority of the voters of one party can elect all its candidates, leaving a substantial minority of voters without an effective voice in government." *State ex rel. Maisano* v. *Mitchell,* supra, 264. "The legislature felt that it was important, on boards . . . with clearly 'political' duties, to have a significant minority voice . . . to assure intelligent decision-making." *LoFrisco* v. *Schaffer,* 341 F. Sup. 743, 750 (D. Conn. 1972), aff'd per curiam, 409 U.S. 972, 93 S. Ct. 313, 34 L. Ed. 2d 236 (1972).

Section 9-167a was designed to prevent the members of the majority party from excluding the members of the minority from participating in governmental decisions; therefore, a minority must

be assured a role in the legislative body in order to have an effective voice in government. Because of the unambiguous language of § 9-167a; because of the definition of "legislative body" in § 1-1 (m) and § 7-193 of the General Statutes; and because of this court's precise language in interpreting § 9-167a in *State ex rel. Maisano* v. *Mitchell,* supra, 264, *State ex rel. Bennett* v. *Glynn,* supra, 244, and the United States District Court's decision in *LoFrisco* v. *Schaffer,* supra, I would find no error in the trial court's conclusion that § 9-167a applies to the instant case.

The trial court, nevertheless, concluded that § 9-167a violates the equal protection clauses of the state and federal constitutions "insofar as § 9-167a prevents a party member from being elected as an independent candidate." The court indicated that the violation occurs because § 9-167a (g) treats a member of a party who appears on the ballot without party endorsement differently from a member of a party who appears on the ballot solely as a candidate of some other party.[1]

Section 9-61 of the General Statutes provides: "If the name of any elector appears on the ballot label in an election only under a party designation other than that of the party with which he is enrolled . . . such name shall be removed from the enrollment list for a period of time beginning on the day of such election and ending at the termination of the term of

---

[1] Section 9-167a (g) provides that a party member who runs solely as the candidate of a party other than the one in which he is enrolled will be considered a member of the party under whose aegis he appears on the ballot. By contrast, a party member who appears in the ballot as a candidate without party designation is considered to be a member of his party, rather than an unaffiliated candidate, unless he withdraws from the party six months prior to his candidacy.

the office for which he is a candidate after which time he may apply for enrollment in said party." Thus, although § 9-167a (g) itself does not require a party member to disenroll from his party if he runs with another party's endorsement, the statutory scheme of which it is a part does impose such a requirement.

Even had Ludgin shown that the disaffiliation requirement unequally burdens candidates in his position, his equal protection claim lacks merit. The United States Supreme Court has ruled that necessary state-imposed burdens on the right of candidates to have a place on the ballot are justified by the compelling state interest in political stability. Moreover, that state interest outweighs the interest of the candidate in making a late rather than an early decision to such independent ballot status. *Storer* v. *Brown,* 415 U.S. 724, 736, 94 S. Ct. 1274, 39 L. Ed. 2d 714; see also *Rosario* v. *Rockefeller,* 410 U.S. 752, 93 S. Ct. 1245, 36 L. Ed. 2d 1; *Dunn* v. *Blumstein,* 405 U.S. 330, 348, 92 S. Ct. 995, 31 L. Ed. 2d 274; *Williams* v. *Rhodes,* 393 U.S. 23, 89 S. Ct. 5, 21 L. Ed. 2d 24.

In *Storer,* supra, 733, the Supreme Court found a state requirement that the independent candidate not have been affiliated with a political party for a year before the primary to be expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot and held that the requirement does not violate equal protection. "[The disaffiliation requirement for independent candidates] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against

independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party." Id., 735. The holding of *Storer* leaves no room for doubt that the six-months disaffiliation requirement in § 9-167a (g) is constitutional.

I would, therefore, find error on the constitutional issue.