[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a final decision of the department of public utility control (DPUC) in DPUC Docket No. 88-10-10, dated August 10, 1989, in which the DPUC ruled that the plaintiffs had violated C.G.S. 16-47 and imposed a fine upon the plaintiffs in the amount of $520,000.
Plaintiff WestMarc Communication, Inc., ("WestMarc") is a Nevada corporation with its principal executive offices in Denver, Colorado, and at all relevant times was a majority-owned subsidiary of Tele-Communications, Inc., ("TCI") a Delaware corporation. Plaintiffs WestMarc Development, Inc., ("Sub I") and WestMarc Development II, Inc., ("Sub II") are Colorado corporations and are wholly-owned subsidiaries of WestMarc. Plaintiff WestMarc Development Joint Venture (formerly known as Taft Cable Partners) ("TCP") is a Colorado partnership doing business in Connecticut as "Haystack Cablevision. "TCP holds, certificate issued by the DPUC for the ownership and operation of a community antenna television system the "Haystack System" or the "System") in the towns of Canaan, Cornwall, Norfolk, North Canaan, Salisbury and Sharon. Defendant DPUC is the state regulatory agency charged with the regulation and supervision of certain activities of community antenna television companies. Defendant Office of Consumer Counsel of the State of Connecticut. ("OCC") is charged by C.G.S. 16-2a to act as an advocate for consumer interests in all matters which may affect Connecticut consumers with respect to public service companies, including cable television companies. OCC was a party in DPUC Docket No. 88-10-10. Defendant Haystack Advisory Council is an independent organization established pursuant to Section 16-333-24 of the Regulations of Connecticut State Agencies that was granted status as an intervener in DPUC Docket No. 88-10-10.
TCP owns and operates cable television systems in several states, the Haystack System being its only system in Connecticut. Prior to January 3, 1989, TCP was owned by two general partners, Northeastern Cable Limited Partnership ("Northeastern") and Tele-Communications Cable Company ("TCI Cable"), each of which held a 50 percent Partnership interest in TCP. TCI Cable was a wholly-owned subsidiary of TCI Development Corporation ("TCID"), which in turn is a wholly-owned subsidiary of TCI. Prior to October 25, 1988, WestMarc negotiated with Northeastern and TCI Cable for the CT Page 6484 acquisition by WestMarc of the partnership interests of Northeastern and TCI Cable in TCP. TCP would continue in existence, and no franchises held by TCP would be transferred. On October 25, 1988, the plaintiffs filed an application pursuant to C.G.S. 16-47 for the approval of the DPUC for WestMarc to acquire control over TCP. The plaintiffs notified the DPUC on December 22, 1988, that they were contemplating a restructuring of the proposed transaction and requested that the DPUC postpone further action on this proceeding. The DPUC granted the requested postponement on January 5, 1989. On January 30, 1989, the plaintiffs submitted to the DPUC a description of the restructured transaction and requested that the DPUC process the matter to a conclusion. On April 5, 1989, the plaintiffs informed the DPUC that the transaction had in fact taken place on January 3, 1989, so that the transfer of ownership of TCP to WestMarc became effective on that date, prior to any approval or other action by the DPUC. The plaintiffs also informed the DPUC that they had entered into an agreement ("Management Agreement") which purported to leave control over the Haystack System with Northeastern and TCID, rather than transferring such control to WestMarc, until the entire transaction was approved by the DPUC. Learning of this, the OCC requested that the DPUC amend the Notice of Hearing on the plaintiff's application to include C.G.S. 16-41, which allows the DPUC to impose penalties for violation of certain statutes. On May 4, 1989, the DPUC amended its Notice of Hearing to provide for a determination of whether WestMarc and its affiliates violated C.G.S. 16-47 so as to be subject to sanctions pursuant to C.G.S. 16-41.
Following public hearings, the DPUC rendered its decision on August 10, 1989. It found the following facts. Sub I and Sub II each obtained a 50% interest in TCP as a result of the January 3, 1989, transaction and thus became holding companies within the meaning of C.G.S. 16-47 (a). The Management Agreement did not leave control with Northeastern and TCID, but instead, actual control of the Haystack System was exercised by WestMarc, which wholly owned Sub I and Sub II. WestMarc, Sub I, and Sub II are "suitable and financially responsible to render adequate service." The transfer of ownership and control "will not have an adverse effect on the financial structure and/or financial condition of the Connecticut franchise." The DPUC further found that "this arrangement can be beneficial to the Connecticut subscribers, especially when compared to TCP'S prior partnership interests which were owned by Northeastern, and by TCI Cable, primarily a holding company."
The DPUC also found, however, that the plaintiffs "willfully violated C.G.S. 16-47 (a) and 16-47 (c) by not obtaining prior Department approval" of the transaction. CT Page 6485
Based on the foregoing findings of fact, the DPUC approved the transfer of ownership and control of the Haystack System to WestMarc, Sub I and Sub II in accordance with the January 3, 1989 transaction, but it imposed a fine of $525,000 on the "Applicants", being all of the plaintiffs herein. The amount of the fine was calculated on the theory that there was a continuing violation of the statute from January 3, 1989 to August 1, 1989, the date when the DPUC's decision was due, a total of 210 days at a per diem fine of $2500.
This appeal is brought pursuant to the provisions of C.G.S.16-35 and 4-183, which together authorize any person aggrieved by a final decision of the DPUC to appeal to this court. The plaintiffs have no further administrative remedy and they are clearly aggrieved by the order of the DPUC in imposing the fine on them.
The plaintiffs raise ten issues as the basis for their appeal. As summarized in their brief, they are as follows:
 1. The plaintiffs did not violate Section 16-47
because they did not acquire control of the Haystack System before the DPUC granted its approval . . . . . . . . . . . . . . . .
 2. The DPUC lacks authority under Section 16-41
to fine these plaintiffs . . . . . . . .
 3. The amount of the fine exceeds the $5,000 maximum prescribed by Section 16-41 . . . . .
 4. The DPUC erroneously disregarded mitigating circumstances and imposed a fine that is excessive and unjust . . . . . . . . . . . .
 5. Section 16-41 is unconstitutional because it lacks standards to guide the DPUC's discretion . . . . . . . . . . . . . . . . .
 6. The DPUC failed to give notice of the potential amount of the fine as required by Section 16-41 . . . . . . . . . . . . . . .
 7. The Federal Cable Act prohibits the DPUC's regulation of the plaintiffs' transaction and the imposition of the fine. . . . . . .
 8. The DPUC's order that the fine shall not be chargeable to subscribers is rate regulation CT Page 6486 prohibited by the Cable Act . . . . . . . .
9. The decision violates the commerce clause. . .
10. The decision violates the First Amendment. . . .
 I.
The plaintiffs' first claim of error is directed at the DPUC's finding that they violated C.G.S. 16-47 (c). That section, in pertinent part, reads as follows:
 No corporation, association, partnership, trust or similar organization, or person shall take any action that causes it to become a holding company with control over a . . . community antenna television company engaged in the business of supplying service within this state . . . without first making written application to and obtaining the approval of the department.
A holding company is defined as an entity that "controls" a cable television company. C.G.S. 16-47 (a). "Control" is defined as "possession of the power to direct or cause the direction of the management and policies of" a cable television company. Id.
The plaintiffs contend that the Management Agreement that they entered into simultaneously with the transfer of ownership of the Haystack System prevented a violation of C.G.S. 16-47 by separating control of the System from ownership and leaving control with the prior owners until permission of the DPUC could be obtained. Under this Agreement, Northeastern and TCID, the Haystack System's owners before the transaction in question, became collectively "the Manager" and retained "the sole, full and exclusive right to manage and control the business and affairs" of the System and to "make all decisions regarding the business" of the System. The Agreement provides, on the other hand, that the business of the System be conducted for the benefit of plaintiffs WestMarc, Sub I and Sub II; that those plaintiffs had the right to remove the Manager and appoint a successor; and that the Agreement was limited in duration to six months and that any renewal required the consent of the plaintiffs. In actual practice, the day-to-day personnel who operated the System, including the manager on the scene, were employees of plaintiff TCP, and one key executive was simultaneously a director and executive officer of plaintiff WestMarc and TCID. The record contains considerable testimony of employees of the various companies concerning who controlled CT Page 6487 various aspects of the System's business.
Under statute and case law, this court's scope of review of administrative decisions is very limited. C.G.S. 4-183
provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." See, also, Feinson v. Conservation Commission,180 Conn. 421, 425 (1980), and numerous cases cited therein; holding that "[t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Furthermore, "[t]he court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence." Persico v. Maher, 191 Conn. 384, 409 (1983). In the instant case, the DPUC concluded on the basis of the evidence before it that the plaintiffs did not forego acquiring and exercising actual control over the management of the Haystack System when they acquired the ownership interest in January 1989, notwithstanding the provisions of the Management Agreement which suggest otherwise. This court finds that there is substantial evidence, as outlined above, which supports the DPUC's conclusion, and, accordingly, it must be accepted. This is so even if the evidence is disputed or if there is conflicting evidence.
The DPUC's conclusion on the issue of control leads logically to the further conclusion that the January 1989 transaction, consummated without prior approval by the DPUC, constituted a violation of C.G.S. 16-47 (c) by plaintiff WestMarc, Sub I and Sub II, which became holding companies as a result. Their appeal in this regard, therefore, may not be sustained.
The situation is different in the case plaintiff TCP. That organization was the operator of the Haystack System prior to the January 1989 transaction and remained as such thereafter. It took no action to cause it to become a holding company without the permission of the DPUC, as proscribed by C.G.S.16-47 (c), and, therefore, the DPUC's decision is clearly erroneous to the extent it holds TCP to be in violation of the statute.
 II.
The plaintiffs' second claim of error is that the DPUC wrongly applied the provisions of C.G.S. 16-41 in imposing the fine on them. That statute, in pertinent part, reads as follows: CT Page 6488
 (a) Each public service company, its officers, agents and employees . . . shall obey, observe and comply with all applicable provisions of (Title 16) . . . Any such company . . . which the department finds has failed to obey or comply with any such provision of this title . . . shall be fined by order of the department. . . .
The plaintiffs contend that the application of the statute is limited by its terms to "public service companies" and that they are "holding companies", not public service companies. The court agrees that the statute is limited in application to public service companies but disagrees with the plaintiffs' argument that they do not fall within that category. Instead, the court holds that the DPUC was correct in concluding that WestMarc, Sub I and Sub II were public service companies. The court's holding with respect to the plaintiffs' status as public service companies is based on statutory definitions and the DPUC's factual findings. Section 16-1 (a)(4) of the general statutes provides, in pertinent part, as follows:
 "Public service company" includes . . . community antenna television companies, owning, leasing, maintaining, operating, managing or controlling plants or parts of plants or equipment . . . within this state. . . .
Section 16-1(a)(14) provides that:
 "Community antenna television company" includes every corporation . . . owning, leasing, maintaining, operating, managing or controlling a community antenna television system. . . .
The DPUC found that WestMarc, Sub I and Sub II owned and controlled the Haystack System, which is a community antenna television system, and the court does not disturb that finding, as indicated above. Those three plaintiffs are, therefore, community antenna television companies as defined by C.G.S.16-1(a)(14) and public service companies as defined by C.G.S.16-1(a)(4).[1] They are, therefore, subject to the provisions of section 16-41.
 III.
The plaintiffs' third claim of error is in the alternative. They contend that if the DPUC was authorized to fine WestMarc, CT Page 6489 Sub I and Sub II, its decision imposing the fine was erroneous because the maximum fine under C.G.S. 16-41 in their case is $5000. Section 16-41 provides that any public service company which violates a provision of title 16 is subject to a fine of "not more than five thousand dollars for each offense." It provides further that "[e]ach distinct violation of any such provision of this title . . . shall be a separate offense and, in case of a continued violation, each day thereof shall be deemed a separate offense." In this case, the DPUC found that the plaintiffs were guilty of a continuing violation over a period of 210 days, and it imposed a fine of $2500 for each day of that period. The court agrees with the plaintiffs that the DPUC erroneously interpreted the statutes involved and, as a result, miscalculated the fine.
In its decision, the DPUC found and this court has affirmed that WestMarc, Sub I and Sub II violated C.G.S. 16-47 (c). The operative language of that statute for determining whether the plaintiffs violated it is as follows:
 No corporation . . . shall take any action that causes it to become a holding company . . . without first . . . obtaining the approval of the department of public utility control. . . .
The DPUC argues that the broad underlying intention of the statute is to prevent a corporation from exercising the powers of a holding company without first obtaining departmental approval. Therefore, it contends, a corporation which takes an unauthorized action and thereby becomes a holding company is guilty of a continuing violation of the statute unless and until the requisite approval is obtained. The DPUC offers no authority for this argument other than the familiar rule that great deference is traditionally afforded to the interpretation of a statute by the agency responsible for administering it. See, State Board of Labor Relations v. Board of Education,177 Conn. 68, 74 (1979). This rule, however, is based on the notion that consistent interpretation of a statute by the appropriate administrative agency over a period of time shows a "pattern of enforcement" and is "evidence of what the law is." Anderson v. Ludgin, 175 Conn. 545, 556-557 (1978). there is no evidence in this case, however, that the DPUC has ever before interpreted a single violation of section 16-47 (c) as being a "continued violation" within the meaning of section 16-41 (a). The DPUC's interpretation, therefore, is not a "time-tested interpretation" that requires special deference by the court. See, Anderson v. Ludgin, supra. at 556. Furthermore, the court may, of course, "reserve or modify the decision if substantial rights of the appellant have been prejudiced because the administrative . . . conclusions or decisions are arbitrary" or clearly erroneous. CT Page 6490 E. I. S., Inc. v. Board of Registration, 200 Conn. 145, 148
(1986). In view of the foregoing considerations, the DPUC's interpretation is not entitled to special deference in this case, and the court concludes that it is erroneous.
The starting point in statutory construction is the language employed by the legislature. King v. Board of Education, 203 Conn. 324, 332 (1987). "Where the language of the statute is clear and unambiguous, (the court must not) speculate as to the legislative intention, because it is assumed that the words express the intention of the legislature." Nicotra Wiegler Investment Management, Inc. v. Grower, 207 Conn. 441,445 (1988). In the instant case, where the nature of the statute in question is clearly penal, the language must be strictly construed and not extended by implication. Janow v. Town of Ansonia, 11 Conn. App. 1, 3 (1987). All of these basic precepts of statutory construction disfavor an expansive reading of section 16-41. Although it may well be, as the DPUC argues, that the overall statutory scheme is to prohibit the existence of unauthorized holding companies, section 16-47 (c) is limited by its terms to prohibiting the particular unapproved actions which lead to the creation of such holding companies. The singularity of the offense proscribed by section 16-47 (c) is emphasized by the language of subsections (g) and (h). Thus, subsection (g) provides that "any action" prohibited by subsection (c) is voidable by the DPUC, and subsection (h) provides that "any action" which violates subsection (c) is subject to injunction by the court.
Subsections (g) and (h) of section 16-47, together with section 16-41, provide a workable and reasonable statutory course of action for the DPUC whenever a violation of section16-47 (c) occurs. The DPUC may impose a fine of up to $5000 for the violation and may also void the transaction if the public interest so requires. But a fair reading of the statutes does not permit the DPUC to impose a fine calculated in the manner as was done in this case. The maximum fine which section 16-41
allows in this case is $5000 for each distinct violation of section 16-47 (c) by WestMarc and by Sub I and by Sub II. The case must, therefore, be remanded for further proceedings in accordance with this decision.
 IV.
The court has reviewed the plaintiffs' remaining claims of error. In view of the decision to remand, it is unnecessary to consider those claims which relate to the DPUC's imposition of the fine. The claim concerning the pass-through of the fine to subscribers is moot by virtue of the federal court decision on the same issue. The plaintiffs' other claims are without merit. CT Page 6491
 V.
The appeal of plaintiff WestMarc Development Joint Venture (TCP) is sustained and the decision of the DPUC with respect to it is reversed. With respect to plaintiffs WestMarc Communications, Inc.; WestMarc Development, Inc (Sub I); and WestMarc Development II, Inc. (Sub II); the case is remanded for further proceedings.
MALONEY, J.